KAUDER, KLOTZ, & VENITT, Plaintiff,

v.

ROSE'S STORES, INC., Defendant.

Civ. No. 944.

United States District Court,
E. D. North Carolina,
New Bern Division.

June 20, 1973.

Laurence A. Stith, of Barden, Stith, McCotter & Stith, New Bern, N. C., for plaintiff.

Charles F. Blackburn, of Perry, Kittrell, Blackburn & Blackburn, Henderson, N. C., David L. Ward, Jr., of Ward, Tucker, Ward & Smith, New Bern, N. C., for defendant.

## MEMORANDUM OPINION AND ORDER

LARKINS, District Judge:

On June 3, 1953, defendant Rose's entered into a 25 year lease agreement with Marion Investment Company for four lots and a building in Morehead City, North Carolina. In 1961 plaintiff acquired the property subject to the original lease. The lease provides for a $15,000 per year minimum guaranteed rental which covered the 15,000 square foot building. In addition the lease provides for a 5% of gross sales override over $300,000 per year as additional rental. The store covered by the lease in question is at the corner of Arendell and 8th Streets in downtown Morehead City and is Rose's Store # 59. It has been continuously operated since 1953, having produced sales in every year which returned additional rental to the owners from the percentage of sales override.

On or about August 1, 1971, Rose's opened a 50,000 square foot store (# 200) in the Plaza Shopping Center approximately 1.9 miles west of downtown Morehead City. During the next year, gross sales in Store # 59 dropped substantially resulting in the instant suit.

The plaintiff alleges in the complaint that the opening of Store # 200 in the immediate vicinity of the demised premises diverted business from the demised premises and thereby substantially diminished sales and income at the demised premises, resulting in a drop in plaintiff's rental income based on gross sales. Plaintiff contends that these actions of the defendant violated express and implied conditions, covenants, and promises contained in the lease. The plaintiff further contends that the defendant's actions were done willfully with the intention of diverting business from Store # 59 and thus reducing the amount of rent attributable to gross sales. Plaintiff prays for an accounting, compensatory and punitive damages, interest, and costs. Plaintiff also prays for the Court to enjoin the defendants from diverting business from the demised premises and maintaining a store in competition therewith.

The defendant admits the terms of the lease entered into in 1953 and the opening of the new store, # 200, in the Plaza Shopping Center in 1971. However, defendant denies that it has violated any express or implied covenants, conditions, or terms of the lease and denies that it willfully opened the new store to intentionally divert business from the plaintiff's store.

Specifically, the defendant contends (1) that in the late 1960's Morehead City had expanded westward and that Carteret County was losing customers to other localities because of poor product selection, noncompetitive pricing, poor parking facilities, and a lack of modern stores; (2) that the opening of the new 50,000 square foot store would offer a wider selection of items at a lower cost to the consumer in a modern shopping center with ample parking; (3) that the defendant has at all times operated Store # 59 as a profitable business and continues to do so; and (4) that the guaranteed minimum of $15,000 is a reasonable rental value of the property with 5% additional rent on gross income over $300,000 being a bonus to the plaintiffs in that Store # 59 has done considerably better than anticipated by the parties making the lease.

This cause is now before this Court on a Rule 12(b)(6) motion to dismiss filed by the defendant and motions for summary judgment filed by both parties. A hearing was held in Trenton, North Carolina on May 23, 1973.

There is no express condition in the lease in question which prohibits the defendant from opening another store in any given area. Nor is there any term

or condition of the lease which specifically prohibits competition in any fashion by the defendant. The key provision upon which the plaintiff relies is:

"1. The Tenant shall use and occupy the entire buildings on the demised premises for the sales by Tenant at retail of merchandise and for no other purpose.

Tenant shall diligently and continuously operate and conduct its retail business throughout the entire term and shall use all proper and reasonable efforts consistent with good business practice to the end that the gross sales of such business shall throughout the entire term be as large as possible."

The plaintiff claims that the above quoted provision places the burden upon the defendant to diligently and continuously operate its business and to use all proper and reasonable efforts to make gross sales as large as possible. Plaintiff further claims that the provision obligates the defendant to do nothing inconsistent with the production of maximum rent.

█ These allegations are sufficient to raise the issue that the defendant violated certain terms and conditions of the lease. Therefore, a valid cause of action has been stated and defendant's motion to dismiss under Rule 12(b)(6) must be denied.

Therefore, both parties having moved for summary judgment under Rule 56, and it appearing that there is no genuine issue as to any material fact, the Court, having carefully studied the pleadings, affidavits, answers to interrogatories, and other material in the record, will next consider the cross motions for summary judgment.

The language of the lease provides that the defendant has an obligation to diligently and continuously operate its business in Store # 59 and to use all proper and reasonable efforts to make gross sales as large as possible. Therefore, the issue is whether, by opening Store # 200 in the Plaza Shopping Center, the defendant has breached its obligation. This Court feels that it has not.

The basic law in this area is found in 52 C.J.S. Landlord and Tenant § 502(2), pp. 454 and 455.

"Where there is an implied obligation on the part of the lessee to occupy and use the demised property for the purpose expressed in the lease, he cannot; by ceasing to operate, or by changing the nature of his business, or by transferring operations to other locations, as by diverting his business to another store which he owns, or by moving some departments of the business to other premises, avoid liability for the percentage rent and pay merely the minimum amount provided for or guaranteed.

In this connection it has been stated that the unconscionable diversion of business by the lessee from precentage-lease premises should be penalized, and, thus, where a lessee opens a like business in the immediate vicinity, resulting in loss of business on the leased property, the income from the new place may be treated as belonging to the old. *Whether a lessee under a percentage lease or rental agrement is prohibited from engaging in a competing business in the vicinity depends on the facts and circumstances of the particular case.*" (emphasis added)

First of all, the Court notes that Rose's did not open Store # 200 in the "immediate vicinity" of Store # 59. Store # 200 is 1.9 miles from Store # 59 and is in a suburban shopping center as opposed to Store # 59's downtown location.

Next, the Court notes that in most cases which arise under similar circumstances the defendant has vacated the demised premises, changed the nature of the business, transferred operations to another location, or diverted his business. All of this is done in an attempt to diminish the rent paid the lessor on a percentage basis. Looking at the facts and circumstances in the instant case, it is noteworthy that Rose's is continuing to operate Store # 59, has not changed the nature of the business, and is still paying a percentage on gross sales over

$300,000 per year. The fact that some operations may have been transferred to Store # 200 and that business may have been diverted from Store # 59 does not appear to be the result of an attempt to diminish the rent payable to the plaintiffs on a percentage basis.

The Court has carefully studied the Retail Consumer Survey of Carteret County tabulated in 1970. The report found that a substantial percentage of apparel, general merchandise, and furniture sales were lost to the county. The reasons given were that the stores in the county could not offer the large volume, narrow profit margin competitive pricing available in other areas. The report concluded,

"Carteret stores are not modern, do not have satisfactory parking facilities, and have an inadequate variety of merchandise that is not competitively priced."

The defendant, faced with the accurate details of the above report, had an opportunity to locate in the new Plaza Shopping Center in the rapidly growing western part of Morehead City. They had a chance to lease a 50,000 square foot store which would enable them to offer large volume, narrow profit margin items which the public demands and which Store # 59, with its space limitations, could not handle. Store # 200 would offer a wide variety of competitively priced items in a modern facility with ample parking. L. H. Harvin, Jr., President of Rose's, stated in his affidavit,

"The Rose's management felt that if we did not exercise our opportunity to continue to be the lead mercantile store in the area that one of our many competitors would exercise the opportunity and we would be relegated to a secondary sales position in our old store and would be faced with materially decreasing sales and the possibility of an unprofitable operation."

It is the opinion of this Court that the opening of Store # 200 was not an attempt to diminish the rent payable to the plaintiffs but was merely a sound business venture. The defendant is engaged in a highly competitive business in a rapidly growing community. There is nothing unusual in chain stores adding to their number.

The original lease was entered into in 1953. Our country has changed greatly in the last 20 years with regard to consumer demand, the effects of inflation, and mobilization away from the city. Downtown area stores now have branches in suburban shopping centers. People do not want to fight the traffic, parking problems, and added distance to shop downtown when a one stop shopping center can meet their needs. The trend has always been to shop for convenience and economy. Today, a modern suburban shopping center fulfills this demand.

There has been a definite decrease in gross sales in Store # 59 since the opening of Store # 200. The first year gross sales dropped from over $1,000,000 to just over $500,000, a loss of $695,673.79 to be exact. This would be a rental loss of $34,783.69. This loss can be partially attributable to the trend away from downtown shopping. It is also logically attributable to the opening of Store # 200. However, with the trend toward shopping center patronage, had defendant not opened the new store, a competitor would probably have done so, and business in Store # 59 would likewise be hurt. Thus the Court concludes that the opening of Store # 200, even if it did diminish gross sales in # 59, was not done willfully with the intention of diverting business from Store # 59.

The Court, in reaching this decision, has studied Food Fair v. Blumberg, 234 Md. 521, 200 A.2d 166, which analysed the extent of restrictions imposed upon chain store lessees. This Court, like the Maryland court, is unable to conclude that the lessees could not expand their business to the area of the new store.

This Court is also of the opinion that the minimum rent stipulation is, in itself, a fair and adequate rent and that the percentage override is more in the

nature of a bonus. See 170 A.L.R. pp. 1117, 1118. Mr. Harvin states in his affidavit,

" . . . in 1953 such a guaranteed minimum rental was reasonable and realistic and was designed to provide a realistic return on the investment in such a store. . . . that sales volume in this store has, over the years of its operation since 1953, been considerably greater than was anticipated at the time of the entry into this lease . . . ."

This statement seems feasible when it is seen that the plaintiffs paid $265,071.00 for the property in 1961.

It has been held that where the percentage lease provides no minimum guaranteed rental or a purely nominal guarantee, the tenant is under an implied obligation to conduct the business in good faith. (cites omitted). It has also been held that if the guaranteed rental provides the landlord an adequate return on his investment and the percentage rental feature is in the nature of a bonus, there is no obligation upon the tenant as to the manner of conducting the business not expressed in the lease. (cites omitted). See *Food Fair,* supra at 173.

The $15,000 annual guarantee is more than a purely nominal rental figure. But even if it were not so, the defendant has made a good faith effort to conduct the business in a proper and reasonable manner. The lease obligates the defendant to try to insure that gross sales will be as great as possible, and this is being done under the circumstances in this case. The fact plaintiffs are not receiving an extremely high rent is no reason to say the defendant has breached the lease. Should the defendant vacate the premises, a different conclusion might be reached.

The leading case in North Carolina is Jenkins v. Rose's 5, 10 and 25¢ Stores, Inc., 213 N.C. 606, 197 S.E. 174 (1938), which held:

"In the absence of specific provision in the lease contract that lessee should occupy and use the demised premises, lessee is not bound so to do, and lessors are entitled only to the minimum rent stipulated in the contract for the year in question."

In most cases of this sort, the defendant has either vacated the demised premises or opened a competing store adjacent to or close by the old store. That is not the case here. To say that by opening a new store nearly 2 miles from the demised premises is a failure to diligently use all proper and reasonable efforts consistent with good business practice to the end that gross sales be as large as possible and is a breach of the lease is to try to write a restrictive covenant against competition into the lease when none exists.

It was held in James C. Greene Company v. Kelley, 261 N.C. 166, 134 S.E.2d 166 (1964) that restrictive covenants not to engage in competitive employment are in partial restraint of trade and therefore must be in writing, supported by consideration, and reasonable as to time, territory, and terms. It is generally held that contracts in restraint of trade are to be strictly construed, 17A C.J.S. Contracts § 327(4), p. 273. To provide the relief requested in the complaint would be in effect allowing the plaintiff to restrict the defendant's trade without an express provision for this in the lease. Rose's was certainly operating consistently with good business practice by taking the opportunity to open a new store in a new shopping center outside of Morehead City.

It is the conclusion of this Court that the defendant has breached no obligation imposed by the lease. Rose's is continuously operating the plaintiffs' store and is making a good faith effort to use all proper and reasonable methods to make gross sales as great as possible. The opening of Store # 200 was consistent with good business practice, and to hold Rose's liable for breaching the lease by opening this store would unduly restrict a modern chain store in an era in which the public demands cannot be met by the once popular downtown store.

Now therefore, in accordance with the foregoing, it is

Ordered, that the defendant's motion to dismiss be, and the same is, hereby Denied, and

Further Ordered, that the plaintiff's motion for summary judgment be, and the same is, hereby Denied, and

Further Ordered, that the defendant's motion for summary judgment be, and the same is, hereby Allowed, and

Further Ordered, that the Clerk shall serve copies of this Order upon Counsel of Record.

Let this Order be entered forthwith.