**Charles W. TAYLOR, Plaintiff-Appellee,**

v.

**UNIVERSAL TIRE, INC.,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 21, 1984.

Application for Permission to Appeal
Denied by Supreme Court
May 29, 1984.

Larry D. Woods, Kim L. Kirk, Woods, Bryan, Woods & Watson, Nashville, for defendant-appellant.

Tom W. Moore, Jr., L. Bruce Peden, Cain, Moore & Peden, P.C., Columbia, for plaintiff-appellee.

## OPINION

TODD, Presiding Judge Middle Section.

The defendants, Universal Tire, Inc., and B.F. Goodrich Company, have appealed from a non jury judgment against them and in favor of the plaintiff, Charles Taylor, in the amount of $66,223.56 for rent due under "percentage of sales" provision of a lease contract.

Issues presented by appellants are as follows:

I. Whether the Trial Court erred in holding that Universal Tire, Inc. must continue to include in the computation of overage rental the revenue from sales and service of large truck tires though that business is conducted at a location separate from and not connected with Northway Shopping Center.

II. Whether the Trial Court's holding that revenue from sales and service of OTR Tires must be included in the calculation of percentage rental for the time period prior to the opening of the 100 Nashville Highway Location is contrary to the preponderance of evidence.

III. Whether the Trial Court erred in admitting into evidence the depositions of employees of Universal Tire, Inc. who did not appear as witnesses at trial, and who have not acted as officers, directors, or managing agents of Universal Tire, Inc.

Plaintiff is the owner of a shopping center consisting of quarters for thirty-one businesses. On January 1, 1970, plaintiff leased to B.F. Goodrich Company a space in the shopping center for tire sales and service. The term of the lease was a period of 15 years from the date the premises were ready for occupancy. The rental was 3% of "Net Retail Sales". After the first year, a minimum rental of $15,000 per year was required. Since the lease required payment of 3% of sales, and since the minimum rental of $15,000 per year amounted to 3% of $500,000, in any year in which sales exceeded $500,000, the tenant was obligated to pay the landlord 3% of the sales exceeding $500,000.

On September 1, 1975, with the approval of plaintiff, Goodrich and Universal entered into a sublease agreement by which Universal assumed the obligations of Goodrich under the original lease.

It is unquestioned that the minimum rental of $15,000 per year has been paid as agreed. It is also agreed that "surplus rentals" have been paid except for the two items mentioned in the above issues on appeal.

On September 1, 1980, Universal opened a separate sales and service center for OTR (off-the-road) and heavy truck tires at an address a short distance from the premises leased from plaintiff. Prior to September 1, 1980, all of Universal's tire business in Columbia had been conducted on the premises leased from plaintiff except that OTR tires were delivered and serviced on the customers' premises rather than on the leased premises. None of the sales at the new facility have been included in computing the "surplus rental" on the premises leased from the plaintiff.

As indicated above, appellants' third issue relates to the admissibility of certain depositions. It appears from argument that the depositions in question were given by Lynnard Stinson, Charles Cherry, Clyde Randolph, and Melissa Ellis. Appellants insist that there is no evidence that any of the named deponents fell within the class of persons whose depositions may be used under TRCP Rule 32.01(2). The argument of appellee offers no reason why these depositions were admissible and apparently

concedes that they were not. Appellee insists that the admission of this evidence was harmless because there is other evidence to support the judgment of the Trial Court. Accordingly, the third issue is sustained and this Court will not consider the listed depositions. *Berke v. Chattanooga Bar Assoc.*, 58 Tenn.App. 636, 436 S.W.2d 296 (1968).

Appellants' first issue, above, challenges the holding of the Trial Court that Universal was required to include sales from the new, separate location in computing rentals for the premises leased from plaintiff.

The provisions of the lease concerning rent as percentage of sales are as follows:

1. The term Retail Sales is hereby defined to mean a sale of merchandise or service to an ultimate user or customer except sales to governments or governmental authorities or sales commonly known in the rubber industry as DFB (Direct Factory Billing), and includes all sales to any person, firm or corporation who purchase merchandise for resale, either in the form in which received or for incorporation into an article, product for sale by manufacturing, processing or assembling.

The term Net Retail Sales is defined to mean the amount of retail sales of merchandise or service sold by the Tenant on or through the demised premises after deduction of returns, discounts and allowances and including city, county, state and federal sales, use or excise taxes now or hereafter levied. Tenant agrees to pay additional rental equivalent to the amount by which three (3) percent of the Net Retail Sales made by the Tenant on the demised premises in any lease year exceed the minimum annual rental of Fifteen Thousand Dollars ($15,000.00) in that year. Payment of such additional rental, if any be due, shall be made within sixty (60) days after the end of each lease year. Tenant shall permit inspection and audit of books and records upon request of Lessor. (Emphasis supplied)

The judgment of the Chancellor contains the following:

7. That on September 1, 1980, Defendant, Universal, commenced selling and servicing both OTR and truck tires physically from a location other than the leased premises. From and after August 31, 1980, Defendant, Universal, has failed to include the sales and service of truck tires in computing percentage rental due Plaintiff subsequent to that date.

8. That Plaintiff, Charles W. Taylor, did not consent to or offer to modify the lease or sublease as to the sales and servicing of truck tires.

9. That the failure of Defendant, Universal, to include the sales and service of truck tires occurring subsequent to August 31, 1980, in computing net retail sales and the overage rental due Plaintiff was contrary to the terms of the lease agreement and sublease. The Court specifically finds that the transfer by Defendant, Universal, of certain functions pertaining to its sales and service of truck tires to the new location and the subsequent failure to pay percentage rental based upon the sales and service of truck tires constitutes an unauthorized deviation from the percentage lease agreement.

It is thus seen that the issue as to liability for percentage of sales away from the leased premises rests entirely upon the interpretation of the lease to determine whether the lessee was required to confine all its sales to the leased premises so as to give lessor the benefit of the percentage of all sales; or whether the lessee was free to add an additional sales outlet without liability to lessor to pay 3% of the sales at the new outlet.

■ In support of the finding of the Chancellor, appellee relies upon TRAP Rule 13(d) which provides a presumption of correctness unless the evidence preponderates otherwise. However, there is no such presumption as to a ruling of law. Generally, the interpretation of a written agreement is a matter of law and not of fact. *Oman Construction Co. v. Tennessee Central*

*Ry. Co.,* 212 Tenn. 556, 370 S.W.2d 563 (1963). *Malone & Hyde Food Services, a Div. of Malone & Hyde, Inc. v. Parson,* Tenn.App.1982, 642 S.W.2d 157.

Appellee next relies upon a provision of the lease as follows:

1. USE: (a) Tenant *will* occupy and use said premises for the sale, storage, repair and servicing of its merchandise, ... and for all other operations necessary or incident to the conduct of its business....

■ Appellee conceives that the foregoing language forbade the conduct of business elsewhere. In the present case, the separate operation was in the vicinity of the leased premises. However, the interpretation urged by appellee would forbid the lessee from conducting business at any other location anywhere. This might be within reason where the tenant was a local, one-location business; but, in the case of the original lessee, a national tire manufacturer and distributor, it cannot be conceived that it was intended that its entire distribution activities would be confined to a single shopping center in a single town. Appellee would argue that no such far reaching and unreasonable limitation was intended; but if it be first conceded that some limitation was intended, then the problem immediately arises as to how much limitation was intended. For example, would another operation be permissible in the next block, across town, in the same county, in an adjoining county, or in an adjoining state? There is nothing in the lease agreement to set criteria for other permissible operations. Thus any implied limitation upon operations on other premises must be inoperative for lack of definiteness.

Appellee cites *Fox v. Fox Valley Trotting Club,* 1956, 8 Ill.2d 571, 134 N.E.2d 806. However, in that case, the lessee moved all of its operations to another location. Moreover, it was shown that the leased property was worth $1,500,000 and the "base rental" of $25,000 per year would yield only 1⅔% on the investment. It was contemplated by the parties that the percentage clause of the lease with the base rental would yield $125,000 to $150,000 per year to the lessor. If equivalent facts were shown by the record in this case, the judgment of the Chancellor might be justified. However, such convincing circumstances do not appear in this record.

Appellee also cites *Ayres Jewelry Co. v. O & S Building,* Wyo.1966, 419 P.2d 628. In that case, the jeweler-tenant vacated the premises before the expiration of the lease and thereby deprived the lessor of any enhancement of rental from percentage of sales. If the facts of the present case were similar, the judgment of the Chancellor might be justified; but the tenant in the present case continued to occupy the premises and conduct business therein.

Appellee also cites *Kauder, Klotz & Venitt v. Rose's Stores, Inc.,* E.D.N.C.1973, 359 F.Supp. 1280, a decision of a trial court which was apparently not reviewed by an appellate court. In that case, the lease provided that:

Tenant shall diligently and continuously operate and conduct its retail business throughout the entire term and shall use all proper and reasonable efforts consistent with good business practice to the end that the gross sales of such business shall throughout the entire term be as large as possible.

The tenant continued to operate one of its stores on the leased premises, but opened another store about 2 miles from the leased premises for business reasons explained to the Court. The trial court rendered judgment for the defendant, finding no intent to restrict the tenant in respect to operating at other locations.

In *Kroger Company v. Bonny Corp.,* 1975, 134 Ga.App. 834, 216 S.E.2d 341, the Georgia Court held that a provision that "tenant will use said premises in a lawful manner" did not preclude the tenant from vacating the premises and paying only the base rental.

This Court conceives that justice and right lies in the ascertainment of the joint intentions of the parties, if expressed, and,

if not, that which may be reasonably inferred from the circumstances. That is to say, the Court must determine under the wording, of the lease and the circumstances known to both parties, what each party had a right to expect. Such is the import of *Fox v. Fox Valley Trotting Club* and *Ayers Jewelry Co. v. O & S Building,* supra, and other authorities on the same subject.

In *Stop and Shop, Inc. v. Ganem,* 1964, 347 Mass. 697, 200 N.E.2d 248, it was held that, where the base rent was substantial and there was no showing of a disparity between actual rental value and agreed base rental, there was no implied covenant to continue operation of a supermarket and lessee was free to open another store elsewhere in the community for sound business reasons and without a purpose to injure the landlord. The Court further held that the omission to specify an agreement in a written lease is evidence that there was no such agreement; that covenants will not be extended by implication unless the implication is clear and undoubted; that justice, common sense and probable intention of the parties are the guides to the construction of a written instrument; and that the undertakings of each party to a contract must include any promise which a reasonable person in the position of promisee would be justified in understanding was included.

There is no evidence of the market rental value of the premises, but plaintiff testified without contradiction that the minimum rental stipulated in the original lease with Goodrich was "the least that I could live with".

Appellee argues that $15,000 per year was not a sufficiently substantial base rent to relieve the lessee of the obligation to retain all of its business on the premises, citing *Fifth Avenue Shopping Center, Inc. v. Grand Union Company,* 491 F.Supp. 77 (N.D.Ga.1980), a trial court decision recognizing that a base rent which is 57% of the total rent paid during occupancy raises an inference that it is not "substantial". This Court does not consider that the percentage relationship is determinative of the duties of the lessee. As heretofore stated, this Court recognizes some duty of the lessee to carry out the obvious mutual intent of the contracting parties as they knew and understood or should have known and understood that mutual intent. One of many circumstances to be considered in arriving at the intent of the parties is the relationship of basic rent to total rent. However, this single circumstance is not determinative. Moreover the relationship of base rental to total rental is to be determined from the operation of lessee's business on the premises and not from the total volume of business generated by expansion into two locations. There is no reason to expect that the lessee by confining its operations to the inadequate space of the leased premises, could have achieved the same volume of business as was enjoyed by use of the additional space and convenience of the new location.

In *William Berland Realty Co. v. Hahne and Company,* 1953, 26 N.J.Super. 477, 98 A.2d 124, it was held that where the lease provided for use of the premises as a retail store with rental based on percentage of sales with a minimum annual rent, there was no implied covenant against adding to or subtracting from the business conducted on the premises or of opening another store across the street to which some departments were transferred, so long as such changes were made in good faith. The Court also held that generally the parol evidence rule prohibits modification of written contracts by oral evidence, but an implied covenant may be recognized as an articulation of a provision implicit in the agreement and as much a part of it as if expressed therein; that Courts may establish the meaning of contracts, but may not make a better or different contract than the parties themselves have seen fit to enter into; and that terms are implied in contracts, not because they are just or reasonable, but because the parties must have intended them and failed to express them in writing because they were too obvious to need expression.

In *Jenkins v. Rose's 5, 10 & 25¢ Stores*, 213 N.C. 606, 197 S.E. 174 (1938) the lease provided for a minimum rental of $200.00 per month plus 5% of sales in excess of $48,000 per year "made by the store in said building". The North Carolina Supreme Court held that there was no obligation to keep the store open during the entire lease period and that payment of the minimum rent after closing the store was a satisfaction of the rental obligation.

In *Professional Building of Eureka, Inc. v. Anita Frocks, No. 6*, 178 Cal.App.2d 276, 2 Cal.Rptr. 914 (1960), the lease provided for rental of 6% of gross sales less a guaranteed rent of $700 per month. Gross sales was defined as "gross amount—derived from business conducted on the premises". A judgment sustaining a demurrer was reversed and the cause remanded for evidence of circumstances and determination of the intention of the parties.

In *Goldberg, 168–05 Corp. v. Levy*, Supreme Court, Queens County (a trial court) 1938, 170 Misc. 292, 9 N.Y.S.2d 304, the tenant agreed to pay $13,800 minimum annual rent and in addition thereto the difference between the minimum rent and 10% of the gross sales. In event annual sales fell below $101,000, the tenant was given the option to cancel. The tenant gave notice of cancellation for inadequate sales and the landlord sued for damages for breach of the lease by negligently or willfully permitting the business to be mismanaged and by diverting part of the business to another location thereby causing annual sales to fall below $101,000 per year. The complaint alleged that the lease contained an express provision obligating the tenant to refrain from conduct calculated to depress the annual gross receipts of the business. The trial Court overruled defendant's motion to dismiss holding that the complaint stated a cause of action, citing authorities that a tenant promising "percentage of receipts" rental thereby promises to use reasonable efforts to produce business and that a tenant may not divert business to another location for the sole purpose of reducing liability for "percentage of receipts" rent.

Appellee relies upon the provision of the lease that the tenant "will occupy the premises for the sale, storage, repair and servicing of its merchandise—and for *all other operations* necessary or incident to the conduct of its business".

The lease appears to require continued occupancy and use throughout the term of the lease, but the lessee remains in occupancy and use, so there is no issue as to breach of this provision.

The provision as to the nature and extent of use does not appear to be mandatory, but rather permissive. That is, the lessee is permitted to use the premises for all phases of its business. This does not require the lessee to confine all of its operations to one location if reasonable business judgment directs otherwise. However, the content of the lease implies that the lessee will not unreasonably divert business to another location merely to reduce liability for rent.

A part of appellant's business is large truck tires, which was conducted on the leased premises until the opening of the separate store since which time all truck tire business has been conducted at the new location. A part of appellants' business is O.T.R. (off the road) tires used by large earth moving equipment. Such tires were too large to be stored on the leased premises and were stored elsewhere until the new location was acquired. Such tires were not installed or serviced on the leased premises, but on the premises of the customer. However, the headquarters for OTR tire operations was on the premises until the opening of the new location.

Because of space limitations and requirements, the sales and service of truck tires at the leased premises were conducted on a concrete pad at the rear of the premises. Appellee complained of the dirt, debris, and blockage of access caused by large trucks waiting to be serviced. On occasions appellee had trucks towed away to relieve congestion.

The parties discussed the rental of additional space in appellee's shopping center

to relieve his complaints of debris and congestion; but appellee decided not to lease such additional space to appellant.

Appellant's primary motive in acquiring the second location was to satisfy the complaints of appellee and its secondary motive was to acquire a more commodious space in which to store OTR tires and sell and service truck tires.

Revenue from sales and service of truck tires was included in total revenue for calculating rent so long as truck tires were sold and serviced on the leased premises. Since the transfer of all truck tire business to another location, no truck tire revenue has been included in computation of rent. Appellee insists that he is entitled to a percentage of truck tire revenue derived from business at the new location. The Chancellor agreed, and awarded plaintiff judgment for $45,939.99 on this account.

This Court respectfully disagrees with the conclusion of the Chancellor. Under the rules heretofore discussed and the circumstances heretofore cited, appellant had the liberty of making reasonably prudent business decisions in the conduct of its business, including the transfer of a part of its business to another location, so long as said decisions were based upon reasonable considerations and were made in good faith without intent to impair appellee's rights. The decision to relocate the truck tire business at another location was within the limitations just cited, and appellant is not liable to appellee for a percentage of revenue from truck tire operations not conducted on the leased premises.

A different problem is presented by the OTR tire business, the active operations of which were never conducted on the leased premises; but, until the opening of the new location, the record keeping and control were based on the premises. Initially, appellant included OTR tire revenue in computation of rentals. Later, however it suggested to appellee that such inclusion was unfair. On October 10, 1977, appellee responded:

So long as you operate this OTR business totally separate and apart from the business here, I have no quarrel with this. However, your sales in 1977 will have to include the OTR sales to the date of this changeover in the figures you submit to me.

Following the receipt of this letter, appellant stored all equipment used in installing and servicing OTR tires on the lots where OTR tires were stored. However, the leased premises continued to be the sales and business office where the OTR tire business was controlled. The lease provides for rent to be computed on all sales or service "on or through" the premises. Until the new office was opened, the OTR tire sales and service were conducted "on or through" the leased premises, even though tires and equipment were stored elsewhere.

The Chancellor held that appellee's letter of October 10, 1977, was an offer to amend the lease which was not effective until accepted by appellant by the total removal of all OTR tire business from the leased premises in September 1980, and awarded plaintiff judgment for $20,283.57 for the percentage of sales of OTR Tires until September 1980.

Whether based upon the theory of delayed acceptance or the theory of continued use of the leased premises for part of the OTR tire operation (sales and records), the chancellor's judgment in this regard was correct.

The judgment of the Chancellor is modified by reducing it to $20,283.57, the amount awarded as percentages of OTR Sales before September 1, 1980. As modified, his judgment is affirmed. Costs of this appeal are taxed one half to appellant and one half to appellee. The cause is remanded to the Chancery Court for such further proceedings, if any, as may be necessary and proper.

Modified, Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.