# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 24, 2012 Session

## ERIE INSURANCE EXCHANGE v. COLUMBIA NATIONAL INSURANCE COMPANY ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 08323      Charles K. Smith, Chancellor**

_____

**No. M2012-00331-COA-R3-CV - Filed January 30, 2013**

_____

This is a declaratory judgment action wherein one insurance company, which provided general liability insurance coverage to the insured, asserts that another insurance company, which provided the same insured with automobile insurance coverage, had the primary duty to pay the cost of defending and to indemnify the insured in a third-party tort action filed pursuant to Tennessee Code Annotated § 50-6-112. The plaintiff insurer asserts that the defendant insurer had the primary duty to provide and pay the cost of the defense in that action and to indemnify the insured pursuant to its automobile insurance policy because an additional insured was operating a "boom truck" owned by the insured that was listed under the defendant's auto policy when the injury to the third-party plaintiff occurred. Both insurers filed motions for summary judgment. The trial court denied the plaintiff's motion and granted summary judgment to the defendant insurer holding that the plaintiff, not the defendant, is liable for providing and paying the cost of the defense and for indemnifying the insured in the third-party tort action. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Gordon C. Aulgur, Nashville, Tennessee, for the appellant, Erie Insurance Exchange.

Joseph M. Huffaker, Nashville, Tennessee, for the appellee, Columbia National Insurance Company.

**OPINION**

This appeal arises from an on-the-job injury to the employee of a subcontractor at a construction site on October 31, 2005. On that date, Timothy Brewington, while working in the course and scope of his employment for a subcontractor, was severely injured when the metal crane on a boom truck that was hoisting sheet metal came into contact with overhead electrical wires electrocuting Mr. Brewington.

Nashville Building Systems, Inc. ("NBS") was the general contractor on the project, which was the construction of a pre-fabricated building in Hendersonville, Tennessee. NBS engaged Mike Miles as the subcontractor responsible for installing the sheet metal portion of the building. Miles in turn employed Richard White to supervise Miles's work. Miles also employed Brewington.

The "boom truck," a 1995 Ford flat-bed truck outfitted with a permanently attached Manitex crane, was owned by NBS, and NBS gave Miles permission to use the boom truck as needed on the project. Immediately prior to the accident, Miles instructed White to use the crane on the boom truck to lift bundles of sheet metal and Brewington was directed to assist White. While White was operating the crane, the crane came into contact with electrical wires causing Brewington to be electrocuted because he was on or in contact with the truck at the time.

Brewington was acting in the course and scope of his employment for Miles when he was injured and Brewington recovered workers' compensation benefits from Miles's workers' compensation carrier, Liberty Mutual Insurance. Thereafter, Brewington filed a third-party personal injury action against White ("*Brewington v. White*") pursuant to Tennessee Code Annotated § 50-6-112(a) of the Workers' Compensation Act alleging that White's negligence caused Brewington's injuries.

Erie Insurance Exchange ("Erie") provided the defense for White pursuant to a Five Star Contractors Policy, which was a general liability policy.

On July 25, 2008, Erie filed a Complaint for Declaratory Judgment against Columbia National Insurance Company ("Columbia").[1] In the Complaint, Erie sought a declaration that Columbia provided commercial automobile insurance for NBS, that the boom truck was

---

[1]Erie also sued NBS, Brandon Powers, Timothy Brewington, Liberty Mutual Insurance Company, and Richard White d/b/a Outright Construction Company in this declaratory judgment action. Erie then settled *Brewington v. White* on behalf of White and Erie's claims against these defendants were resolved and voluntarily dismissed in *Brewington v. White.*

identified in the policy as an insured vehicle, and, therefore, that Columbia had the primary duty to defend and indemnify White under the auto policy because White was an additional insured. Columbia answered denying that it had the primary duty to defend and to indemnify White, asserting instead that Erie had the primary duty.

Erie and Columbia filed cross-motions for summary judgment. Erie asserted that there were no genuine issues of material fact and it was entitled to summary judgment because Columbia's policy was illusory and Columbia should be estopped from denying coverage to White because it listed the boom truck as a vehicle covered by the auto policy. In its motion, Columbia agreed that no material facts are in dispute and asserted that it was entitled to summary judgment as a matter of law because the workers' compensation exclusion in its policy barred coverage for liability arising under any workers' compensation law, the Employee Indemnification and Employer's Liability Exclusion barred coverage for bodily injury sustained by employees of the insured, and its policy excluded coverage for automobiles while they were being used as mobile equipment.

Following a hearing on November 8, 2011, the trial court announced its ruling from the bench. The court denied Erie's motion for summary judgment[2] and granted Columbia summary judgment on one ground. The court concluded that Brewington's claim against White was barred by the Workers' Compensation Act because Brewington's claim was that of a statutory employee against the statutory employer, NBS, which was insured by Columbia. The court found that there was a genuine issue of material fact as to whether the boom truck was covered as automobile or mobile equipment under the policy. The court further found that White was an additional insured under the Columbia policy. Thus, it denied Columbia's motion for summary judgment on its additional two grounds. The order was entered on February 3, 2011, denying Erie's motion for summary judgment and granting

---

[2]Instead of summarily dismissing Erie's complaint when the trial court found that Erie was on the losing side of the controversy, the trial court followed the proper protocol by making a ruling that afforded relief from uncertainty with respect to their legal rights and responsibilities, as we stated in *Cannon County Board of Educ. v. Wade*, 178 S.W.3d 725, 730 (Tenn. Ct. App. 2005):

> The purpose of a declaratory judgment action is to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations. *Snow v. Pearman*, 436 S.W.2d 861, 863 (Tenn. 1968); Tenn. Code Ann. § 29-14-103 (2000). The fact that the party seeking declaratory relief is not entitled to the judgment sought (that it is on the losing side of the controversy) does not mean the parties are not entitled to the relief from uncertainty that a declaratory judgment affords. Thus, a party seeking a declaratory judgment is not required to allege facts in its complaint demonstrating that it is entitled to a favorable decision [footnote and citation omitted]; *see also State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186 (Tenn. 2000) (holding the essential element to be a justiciable controversy exists).

Columbia's motion. The court did not set forth any findings of fact or conclusions of law in the order, but attached its November 8, 2011 ruling from the bench and incorporated that ruling into its order. Both Erie and Columbia raise issues on appeal.

## ANALYSIS

On appeal, Erie contends that the trial court erred as a matter of law when it held that the Workers' Compensation Statute provided an exclusive remedy at law and that since NBS was the statutory employer, Erie was prevented from seeking coverage under Columbia's policy. Columbia contends that the trial court erred in denying its motion for summary judgment on the applicability of the mobile equipment exclusion and the applicability of the Employee Indemnification and Employer's Liability exclusion.

### I. WORKERS' COMPENSATION STATUTE AND EXCLUSION

Mr. Brewington was injured on the job while employed by subcontractor Miles; thus, his rights of recourse are limited to those afforded under the Workers' Compensation Act of Tennessee. The comprehensive Workers' Compensation Act of Tennessee extinguished claims for on-the-job injuries that Tennessee employees had under the common law and replaced those claims with exclusive statutory remedies. Tenn. Code Ann. § 50-6-108(a); *King v. Ross Coal Co.*, 684 S.W.2d 617, 619-20 (Tenn. Ct. App. 1984). However, Tennessee Code Annotated § 50-6-112 affords Mr. Brewington, *inter alia*, the right to sue third-party tortfeasors under limited circumstances. Without this expressed statutory remedy, an action against a third-party tortfeasor, like Mr. White, would not be permissible. Thus, Mr. Brewington's entitlement, if any, to maintain a tort action against Mr. White, and Mr. White's liability, if any, are exclusive products of the workers' compensation statutory scheme. *See* Tenn. Code Ann. § 50-6-112; *see also Queen Ins. Co. Am. v. Insurance Co. of North America*, 455 S.W.2d 149, 152 (Tenn. 1970) (explaining the applicability of a similar workers' compensation exclusion where the Tennessee workers' compensation law was the only source of liability).

The same statutory scheme that affords an injured employee the right to pursue an action against a third-party tortfeasor affords the employer a right of subrogation against the employee's recovery from the third-party tortfeasor. and the employer, or its workers' compensation insurer, may recoup the workers' compensation benefits paid to the employee. Tenn. Code Ann. § 50-6-112(c)(1) (2010).

Erie contends that the trial court erred as a matter of law when it held the workers' compensation statute provided an exclusive remedy at law and that since NBS was the statutory employer of Brewington, Erie was prevented from seeking coverage under

Columbia's policy. Conversely, Columbia insists its insured, NBS, is the statutory employer of Brewington, thus, Brewington is a statutory employee of NBS, which is fatal to Erie's claim.

Realizing the number of layers of contractors and subcontractors separating the general contractor, NBS, from Mr. White and Mr. Brewington, it is difficult to see the employment chain without a listing.[3] Thus, we provide such listing below.[4]

Nashville Building Systems

- NBS is the General Contractor hired by Owner to Construct Building
- NBS is insured by Columbia under three policies, including the Auto Policy
- NBS owned the boom-truck loaned/leased to Miles

Mike Miles

- Miles is a Subcontractor to NBS
- Miles is the direct employer of Mr. Brewington
- Miles leased or borrowed the boom truck from NBS
- Miles is an additional insured under the NBS/Columbia Auto Policy
- Miles employed White to do part of Miles's work on NBS project

Richard White d/b/a Outright Construction Co.

- White was employed by Miles to work on the NBS project
- White operated the boom truck at Miles's direction

---

[3]The employment chart reminds us of nineteenth-century burlesque sketches that used plays on words and names, which were made famous in the 1930's by Bud Abbott and Lou Costello. Wikipedia, Who's on First?, http://en.wikipedia.org/wiki/Who%27s_on_first (last visited Jan. 8, 2013). The premise of their routine was that Abbott is identifying players on a baseball team to Costello, but their names and nicknames can be interpreted as non-responsive answers to Costello's questions. *Id*. In this context, the first baseman is named "Who"; thus, the utterance "Who's on First" is ambiguous between the question ("which person is the first baseman?") and the answer ("The name of the first baseman is 'Who'"). *Id*. The names given in the routine for the players at each position are: First Base: Who; Second Base: What; Third Base: I Don't Know; Left field: Why; Center field: Because; Pitcher: Tomorrow; Catcher: Today; and the Shortstop: I Don't Care. *Id*. The name of the shortstop was not given until the end of the routine, and the right fielder was not identified. *Id*.

[4]This chart was submitted as an exhibit to Columbia's Motion for Summary Judgment.

- White is an additional insured under NBS/Columbia Auto Policy
- White was operating boom truck when Brewington was injured
- Brewington sues White as third-party tortfeasor under Tenn. Code Ann. § 50-6-112
- White is insured under Erie's Commercial General Liability Policy

As the foregoing chart illustrates, Brewington and White were employees of Miles, and they were acting in the course and scope of their employment for Miles at the time of the injury to Brewington. Miles was a subcontractor of NBS at the time of the injury. Thus, NBS was Brewington's statutory employer. Tenn. Code Ann. § 50-6-113 (2010). Because NBS was Brewington's statutory employer, we affirm the trial court's decision to grant Columbia's motion for summary judgment on this issue.

## II. MOBILE EQUIPMENT EXCLUSION

For its part, Columbia contends the trial court erred in denying its motion for summary judgment on the applicability of the mobile equipment exclusion. The trial court denied Columbia's motion for summary judgment on this issue based upon the trial court's determination the motion presented a question of fact and material facts were in dispute. We have determined that the trial court erred when it concluded that this issue presented a question of fact instead of a question of law. Our determination is guided by the court's analysis in *Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, 972 S.W.2d 1 (Tenn. Ct. App. 1998), which held that:

> Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *See Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996); *American Nat'l Property & Cas. Co. v. Gray*, 803 S.W.2d 693, 695–96 (Tenn. Ct. App. 1990). A declaratory judgment proceeding provides an appropriate vehicle for deciding coverage questions. *See Allstate Ins. Co. v. Merritt*, 772 S.W.2d 911, 912 (Tenn. Ct. App. 1989).

> Issues relating to the interpretation of written contracts involve legal rather than factual issues. *See Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App.1991); *Taylor v. Universal Tire Inc.*, 672 S.W.2d 775, 777 (Tenn. Ct. App.1984). Accordingly, issues relating to the scope of coverage and an insurer's duty to defend likewise present questions of law. *See Pile v. Carpenter*, 118 Tenn. 288, 296, 99 S.W. 360, 362 (1907); *Pennsylvania Lumbermens Mut. Fire Ins. Co. v. Holt*, 32 Tenn. App. 559, 566, 223 S.W.2d

203, 206 (1949). These essentially legal questions can be resolved using a summary judgment when the relevant facts are not in dispute. *See St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn.1994); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App.1992).

*Id.* at 5-6.

The general rules of construction of insurance policies are succinctly stated in *Standard Fire Ins. Co.*:

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn.1990); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App.1995). In the absence of fraud or mistake, they should be interpreted as written, *see Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn. Ct. App.1992), and their terms should be given their natural and ordinary meaning. *See Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d at 477. Because insurers are strictly accountable for the language in their contracts, ambiguous language will be construed against the insurer and in favor of the insured. *See Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn.1996).

Insurance policies should be construed as a whole in a reasonable and logical manner. *See English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App.1996). The essential components of a general liability insurance policy include (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements. When coverage questions arise, these components should be construed in the above order to avoid confusion and error. *See* Tinker, 25 Fed'n Ins. Counsel Q. at 222; Long, § 10.04.

The insuring agreement sets the outer limits of an insurer's contractual liability. If coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply. Exclusions can only decrease coverage; they cannot increase it. *See Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 626 (9th Cir.1996); *Continental Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir.1990); *Maimone v. Liberty Mut. Ins. Co.*, 302 N.J. Super. 299, 695 A.2d

341, 344 (1997); 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 7387, at 175 (1976).

Exclusions should also be read seriatim. Each exclusion reduces coverage and operates independently with reference to the insuring agreement. *See Trinity Universal Ins. Co. v. Broussard*, 932 F.Supp. 1307, 1310 (N.D. Okla.1996); *Hartford Accident & Indem. Co. v. A.P. Reale & Sons, Inc.*, 228 A.D.2d 935, 644 N.Y.S.2d 442, 443 (1996). Exclusions should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose. *See Midland Ins. Co. v. Home Indem. Co.*, 619 S.W.2d 387, 389 (Tenn. Ct. App.1981). Once an insurer has established that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion. *See Just v. Land Reclamation, Ltd.*, 151 Wis.2d 593, 445 N.W.2d 683, 688 (1989), *rev'd on other grounds*, 155 Wis.2d 737, 456 N.W.2d 570 (1990).

*Id.* at 7-8.

The relevant insuring provisions in the Columbia auto policy state:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" . . . caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

The "Certain Trailers, Mobile Equipment and Temporary Substitute Autos" provision states:

> If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:
>
> > 1. . . . .
> > 2. "Mobile Equipment" while being carried or towed by a covered "auto".

The policy defines "auto" as follows:

> B. "Auto" means a land motor vehicle . . . but does not include "mobile equipment".

The policy defines "Mobile Equipment" as:

> "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
>
> 1 . . .
> 4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
> a. Power cranes . . . .

Auto policies and commercial general liability ("CGL") policies are created to cover different risks, and so bring cost and efficiency benefits by eliminating the duplicate premiums that would be paid were the risks not separated. *Am. Star Ins. Co. v. Ins. Co. of the West*, 284 Cal. Rptr. 45, 49 (Cal. Ct. App. 1991). To accomplish that, auto policies and CGL policies frequently contain "reciprocal exclusions for autos and mobile equipment." *Id.* Columbia's Auto Policy excludes coverage for mobile equipment *except* when it is being transported by a covered auto. A majority of jurisdictions that have considered the issue before us have held that *only when the vehicle is being driven* does it come within the coverage provided by an auto policy. *See Home Indem. Co. v. Transp. Indem. Co.*, 69 Cal. Rptr. 504 (Cal. Ct. App. June 13, 1968); *Russo v. Veran, Inc.*, 488 So. 2d 372 (La. Ct. App. 1986); *Waldbillig v. State Farm Mut. Auto. Ins. Co.*, 321 N.W.2d 49 (Minn. 1982); *Alfa Ins. Co. v. Ryals*, 918 So. 2d 1260 (Miss. 2005); *Progressive Cas. Inc. Co. v. Yodice*, 694 N.Y.S.2d 281 (N.Y. Sup. Ct. 1999); *D & M Logging Co. v. Huffman*, 427 S.E.2d 244 (W. Va. 1993); *Smedley v. Milwaukee Auto Ins. Co.*, 107 N.W.2d 625 (Wis. 1961); *State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Group*, 569 P.2d 1260 (Wyo. 1977). The substance of the rule is that mobile equipment like the boom truck in this case often has a dual function. *State Farm*, 569 P.2d at 1262.

Therefore, "while being driven from place to place [the boom truck] is an automobile because under those circumstances it is like any other truck carrying any other load from one point to another . . . [c]onversely[] . . . when set up in place to perform its primary function [the boom truck] is no longer an automobile, but at that point and at that time it is being used for its other designed function . . . [and] it then no longer is to be considered an automobile or mother vehicle under the definitional terms of the policy." *Id.*

Furthermore, the majority rule has been applied in circumstances where – as here – the declarations identified the vehicle in question. *Schmidt v. Luchterhand*, 214 N.W.2d 393 (Wis. 1974). In that case, the court reasoned that the "ordinary meaning of the term 'motor vehicle' as it applied to the 1962 truck would not include the permanently attached hoist . .

. [and] that referring to the 1962 truck as a motor vehicle would not be commonly understood as indicating an intent to include the hoist as it was being used in the instant case." *Id.* at 396.

Considering the foregoing, we find the majority rule sound and wholly consistent with Tennessee jurisprudence on the issue of automobile insurance; thus, we shall apply the majority rule in this case.

As this court stated years ago in *Standard Fire Ins. Co.*, 972 S.W.2d at 11, all that remains is to determine whether Columbia has a duty to defend NBS with regard to the claims made by Erie as subrogee of Mr. Brewington. *Id.*

> This duty is measured by the factual allegations in the counterclaims. *See First Nat'l Bank v. South Carolina Ins. Co.*, 207 Tenn. 520, 523, 341 S.W.2d 569, 570 (1960); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d at 480; *I. Appel Corp. v. St. Paul Fire & Marine Ins. Co.*, 930 S.W.2d 550, 552 (Tenn. Ct. App.1996). An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, *see Hamlin, Inc. v. Hartford Accident & Indem. Co.*, 86 F.3d at 94; *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky.1984); *Dempster Bros. Inc. v. U.S.F. & G.*, 54 Tenn. App. 65, 71, 388 S.W.2d 153, 156 (1964), and continues until the facts and the law establish that the claimed loss is not covered. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

*Id.*

We, therefore, shall examine the Columbia policy to determine if the auto policy arguably covers Erie's claims against NBS. The Columbia auto policy states that liability coverage is provided for the types of vehicles covered as "autos" for liability coverage including "Mobile Equipment" while being carried or towed by a covered "auto." The policy then defines auto as: "a land motor vehicle . . . but does not include "mobile equipment." The policy goes on to define mobile equipment as "any of the following types of land vehicles, including any attached machinery or equipment: 4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted: a. Power cranes . . . ."

The injury to Mr. Brewington occurred when the boom truck was immobilized, the wheels were lifted off of the ground, and it was only being used as a power crane to lift heavy materials. As a consequence, the boom truck was not being used as "a land motor vehicle" at the time of Mr. Brewington's accident, it was being used as a power crane, which, by definition, makes it "mobile equipment" under the policy. Thus, pursuant to the clear and

-10-

unambiguous language of Columbia's auto policy, the boom truck was not insured when Mr. Brewington was injured on the construction site. Thus, Columbia's motion for summary judgment on this issue should be granted.

As we have found two grounds upon which Columbia is entitled to summary judgment in this case, it is unnecessary for us to address Columbia's last issue, the applicability of the Employee Indemnification and Employers Liability exclusion. Thus, we shall not discuss this remaining issue.

### In Conclusion

The judgment of the trial court is affirmed, on the same as well as an additional ground, and this matter is remanded with costs of appeal assessed against the Appellant, Erie Insurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE