# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

January 28, 1998

Cecil W. Crowson
Appellate Court Clerk

STANDARD FIRE INSURANCE
COMPANY,

    Plaintiff/Appellant,

VS.

CHESTER-O'DONLEY & ASSOCIATES,
INC., OHIO CASUALTY INSURANCE
COMPANY, CLARK & ASSOCIATES
ARCHITECTS, INC., and HIGHLAND
RIM CONSTRUCTORS, INC.,

    Defendants/Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Davidson Circuit
No. 94C-3993

Appeal No.
01A01-9508-CV-00382

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE BARBARA N. HAYNES, JUDGE

For the Plaintiff/Appellant:

Arthur E. McClellan
McClellan, Powers, Ehmling & Dix
Nashville, Tennessee

For the Defendants/Appellees
Chester-O'Donley & Associates, Inc.:

John B. Link, III
Nashville, Tennessee

Ohio Casualty Insurance Company:

Lewis B. Hollabaugh
Lawrence B. Hammet, II
Manier, Herod, Hollabaugh & Smith
Nashville, Tennessee

Clark & Associates Architects, Inc.:

Andrée Sophia Blumstein
Sherrard & Roe
Nashville, Tennessee

Highland Rim Constructors, Inc.:

C. George Caudle
Baker, Donelson, Bearman & Caldwell
Chattanooga, Tennessee

## VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the scope of coverage of a mechanical subcontractor's commercial general liability insurance policy. The general contractor, the project architect, and the subcontractor's bonding company asserted various damage claims against the subcontractor in litigation stemming from the total failure of the subcontractor's work. When the subcontractor called upon the issuer of its commercial general liability policy to defend against these claims, the insurer denied coverage and filed suit in the Circuit Court for Davidson County seeking a declaratory judgment concerning the scope of its policy's coverage and its obligation to defend the subcontractor. In response to the parties' motions for summary judgment, the trial court held that the policy covered the claims asserted by the general contractor, the project architect, and the subcontractor's bonding company. The insurer asserts on this appeal that its policy did not cover these claims. We vacate the trial court's order because the policy covers only one claim asserted by the general contractor and the subcontractor's bonding company.

## I.

In March 1988 the State of Tennessee and Austin Peay State University contracted with Highland Rim Constructors, Inc. to construct a new music building on Austin Peay's campus in Clarksville. Clark & Associates Architects, Inc. designed the building and served as the project architect. Highland Rim subcontracted the mechanical portions of the work to Chester-O'Donley & Associates, Inc., and Chester-O'Donley, in turn, subcontracted the installation of the ductwork for the heating, ventilation, and air conditioning system to H & R Mchanical Specialties, Inc. Chester-O'Donley also obtained a performance and payment bond for its portion of the work from Ohio Casualty Company.

The new music building was substantially completed in May 1990. Shortly after Austin Peay occupied the building, serious problems with the HVAC system

began to manifest themselves which could not be remedied by fine tuning the HVAC system. Highland Rim determined that the problems were caused by defects in the system's ductwork and terminated its contract with Chester-O'Donley because H & R Mechanical Specialties' work failed to meet the project's specifications. Highland Rim also called upon Ohio Casualty to pay for removing and replacing the entire duct system. Ohio Casualty eventually paid Highland Rim $1,425,835.88.

In August 1991 Chester-O'Donley filed suit in the Circuit Court for Davidson County against Highland Rim, Clark & Associates, H & R Mechanical Specialties, and others alleging various causes of action arising out of the performance of its work. It eventually nonsuited these claims in March 1994, but not before Highland Rim, Ohio Casualty, and Clark & Associates had filed counterclaims seeking damages from Chester-O'Donley. Chester-O'Donley forwarded these claims to Standard Fire Insurance Company, the issuer of its commercial general liability policy, and requested a defense. Standard Fire asserted that its policy did not cover these claims and, in March 1994, filed suit in the Circuit Court for Davidson County seeking a declaratory judgment concerning the scope of its policy's coverage and its obligation to defend Chester-O'Donley. All parties sought summary judgments, and the trial court determined that Standard Fire's policy covered all the pending claims and that Standard Fire was obligated to provide Chester-O'Donley with a defense.

## II.
### THE CHOICE OF SUBSTANTIVE LAW

This case presents a threshold choice of law question. Chester-O'Donley is a Kentucky corporation whose principle place of business is in Paducah, Kentucky. It purchased its commercial general liability policy from Standard Fire in Kentucky, and Standard Fire delivered the policy to Chester-O'Donley in Kentucky. In the absence of an enforceable choice of law clause, Tennessee courts apply the substantive law of the state in which the policy was issued and delivered. *See Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973); *Kustoff v. Stuyvesant Ins. Co.*, 160 Tenn. 208, 212-13, 22 S.W.2d 356, 358 (1929); *Hutchison v. Tennessee*

*Farmers Mut. Ins. Co.*, 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983).[1] Accordingly, questions concerning the construction and operation of Chester-O'Donley's commercial general liability policy must be decided using Kentucky law.

Kentucky law provides little substantive guidance in this case. We have been unable to find any reported Kentucky cases construing commercial general liability policy provisions similar to the ones at issue in this case. Nonetheless, we can apply Kentucky's canons for construing insurance policies, and we may also inform our judgment by reviewing decisions from other jurisdictions construing similar policy provisions. *See Norton-Children's Hosp., Inc. v. First Ky. Trust Co.*, 557 S.W.2d 895, 898 (Ky. Ct. App. 1977); *Collins v. Kentucky Tax Comm'n*, 261 S.W.2d 303, 305 (Ky. Ct. App. 1953).

## III.

### THE USE OF A SUMMARY JUDGMENT TO RESOLVE COVERAGE ISSUES

Tennessee's law governs the procedural aspects of this case even if Kentucky's law governs the substantive issues. *See State ex. rel. Smith v. Early*, 934 S.W.2d 655, 658 (Tenn. Ct. App. 1996); *McReynolds v. Cherokee Ins. Co.*, 815 S.W.2d 208, 211

---

[1]These decisions embody the traditional "lex loci contractu" choice of law theory. The Tennessee Supreme Court abandoned a similar choice of law theory applicable to tort actions, "lex loci deliciti," because it was outmoded and increasingly irrelevant in today's modern industrial world. *See Hataway v. McKinley*, 830 S.W.2d 53, 57 (Tenn. 1992). In its place, the court adopted the "most significant relationship" approach found in Restatement (Second) of Conflict of Laws §§ 6, 145, 146, & 175 (1971).

The court has yet to adopt the similar approach for contract disputes, although Restatement (Second) of Conflict of Laws § 188 embodies such an approach when the parties have not effectively chosen the law applicable to their contract. With specific regard to insurance contracts, the location of the insured risk is given greater weight than any other factor unless the insurance covers a group of risks scattered throughout two or more states. *See* Restatement (Second) of Conflict of Laws § 193 cmt. b. Policies insuring multiple risks in two or more specific states may be treated as insuring individual risks in each state. See Restatement (Second) of Conflict of Laws § 193 cmt. f.

Were we to apply the approach in Restatement (Second) of Conflict of Laws §§ 6, 186, 187, 188, & 193 to this case we would reach the same result reached using the traditional lex loci contractu rule. Standard Fire's insurance policy covered liability incurred by Chester-O'Donley anywhere in the United States of America. Since it did not identify particular risks in specific states, the location of the insured risk is not of controlling importance. *See Continental Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1035-37 (D.N.J. 1993). Notwithstanding the fact that the project was located in Tennessee, Kentucky remains the state with the most significant relationship with this insurance contract after taking into consideration the factors in Restatement (Second) of Contracts §§ 6 & 188(2).

(Tenn. Ct. App. 1991). Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *See Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996); *American Nat'l Property & Cas. Co. v. Gray*, 803 S.W.2d 693, 695-96 (Tenn. Ct. App. 1990). A declaratory judgment proceeding provides an appropriate vehicle for deciding coverage questions. *See Allstate Ins. Co. v. Merritt*, 772 S.W.2d 911, 912 (Tenn. Ct. App. 1989).

Issues relating to the interpretation of written contracts involve legal rather than factual issues. *See Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991); *Taylor v. Universal Tire Co.*, 672 S.W.2d 775, 777 (Tenn. Ct. App. 1984). Accordingly, issues relating to the scope of coverage and an insurer's duty to defend likewise present questions of law. *See Pile v. Carpenter*, 118 Tenn. 288, 296, 99 S.W. 360, 362 (1907); *Pennsylvania Lumbermens Mut. Fire Ins. Co. v. Holt*, 32 Tenn. App. 559, 566, 223 S.W.2d 203, 206 (1949). These essentially legal questions can be resolved using a summary judgment when the relevant facts are not in dispute. *See St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992).

The trial court's decision to grant the motions for summary judgment is not entitled to a presumption of correctness on appeal. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Rather, we must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996). A summary judgment is warranted only when there are no genuine, material factual disputes with regard to the claim or defense asserted in the motion and when the moving party is entitled to a judgment as a matter of law. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

The insurance policy that Standard Fire issued to Chester-O'Donley is in the record, as are the counterclaims against Chester-O'Donley filed by Highland Rim, Clark & Associates, and Ohio Casualty. There are no factual disputes concerning the contents of these documents; accordingly, their interpretation presents questions of

law. The summary judgment in this case can stand only if these documents establish as a matter of law that Standard Fire's commercial general liability policy covers the asserted claims as a matter of law.

## IV.

### COMMERCIAL GENERAL LIABILITY INSURANCE POLICIES

Commercial general liability insurance policies are designed to protect the insured against losses arising out of business operations.[2] These policies have been in use for over fifty years,[3] and their provisions have become relatively standard over the years through refinements by casualty ratings bureaus.[4] In order to prevent overlapping coverage and to minimize gaps in coverage,[5] they combine several historic forms of coverage into an integrated whole with coverage being broadly stated in a single insuring agreement and exclusions circumscribing the broad grant of coverage.[6]

General liability polices are not "all-risk" policies. *See Diamond Heights Homeowners Ass'n v. National Am. Ins. Co.*, 277 Cal. Rptr. 906, 910 (Ct. App. 1991); *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1033 (Md. 1993). They provide an insured with indemnification for damages up to policy limits for which the insured becomes liable as a result of tort liability to a third party. *See Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 791 (N.J. 1979); *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W.2d 760, 764 (Tenn. 1979).[7] The risk insured by

---

[2]*See* 9 Lee R. Russ, *Couch on Insurance 3d* § 129:2 (1997) ("Couch on Insurance 3d").

[3]*See* 2 Rowland H. Long, *The Law of Liability Insurance* § 10.03[2] (1997) ("Long"); Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations - What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 418 (1971) ("Henderson").

[4]*See* 1 Eric M. Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance 2d* § 1.15, at 65-66 (1996) ("Holmes's Appleman on Insurance 2d"); Long, § 10.03[1]; George H. Tinker, *Comprehensive General Liability Insurance - Perspective and Overview*, 25 Fed'n Ins. Couns. Q. 217, 218-19 (1975) ("Tinker").

[5]*See* Holmes's Appleman on Insurance 2d, § 1.15, at 65.

[6]*See* Tinker, 25 Fed'n Ins. Counsel. Q. at 220.

[7]*See also* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Ins. L.J. 785, 786 (1995); Robert E. Keeton &
(continued...)

these policies is the possibility that the insured's product or work will cause bodily injury or damage to property other than the work itself for which the insured may be found liable.[8]

Exclusions for "business risks" began to be included in commercial general liability policies in 1966 to make clear that these policies did not cover the costs of repairing or replacing the insured's defective product or faulty work. *See Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 417 S.E.2d 197, 200 (Ga. Ct. App. 1992); *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W.2d at 765; *Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 153 (Tenn. Ct. App. 1990); Henderson, 50 Neb. L. Rev. at 438. These exclusions are based on the premise that general liability coverage is not intended as a guarantee of the insured's product or work. *See* Neeson & Meyer, at 79.

Accordingly, general liability polices are not intended to cover the insured's contractual liability for economic loss because its work was not that for which the damaged person bargained. *See Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 417 S.E.2d at 200; *Knudson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 234 (Minn. 1986); *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d at 791.[9] As the New Jersey Supreme Court noted in one of the seminal cases construing general liability policies: "The policy in question does not cover the accident of faulty workmanship but rather faulty workmanship which causes an accident." *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d at 796.

## V.

### GENERAL RULES OF CONSTRUCTION

---

[7](...continued)
Adam I. Widiss, *Insurance Law* § 4.8(a) (1988) ("Insurance Law").

[8]*See* Michael J. Brady, *The Impaired Property Exclusion: Finding a Path Through the Morass*, 63 Def. Couns. J. 380, 380 (1996) ("Brady"); Peter J. Neeson & Phillip J. Meyer, *The Comprehensive General Liability Policy and Its Business Risk Exclusions: An Overview* 79-80, 91, reprinted in *Reference Handbook on the Comprehensive General Liability Policy* (American Bar Assoc. 1995) ("Neeson & Meyer").

[9]*See also* Brady, 63 Def. Counsel. J. at 380; Henderson, 50 Neb. L. Rev. at 441; Neeson & Meyer, at 80.

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995). In the absence of fraud or mistake, they should be interpreted as written, *see Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn. Ct. App. 1992), and their terms should be given their natural and ordinary meaning. *See Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d at 477. Because insurers are strictly accountable for the language in their contracts, ambiguous language will be construed against the insurer and in favor of the insured. *See Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996).

Insurance policies should be construed as a whole in a reasonable and logical manner. *See English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996). The essential components of a general liability insurance policy include (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements. When coverage questions arise, these components should be construed in the above order to avoid confusion and error. *See* Tinker, 25 Fed'n Ins. Counsel Q. at 222; Long, § 10.04.

The insuring agreement sets the outer limits of an insurer's contractual liability. If coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply. Exclusions can only decrease coverage; they cannot increase it. *See Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 626 (9th Cir. 1996); *Continental Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir. 1990); *Marmone v. Liberty Mut. Ins. Co.*, 695 A.2d 341, 344 (N.J. Super. Ct. App. Div. 1997); 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 7387, at 175 (1976).

Exclusions should also be read seriatim. Each exclusion reduces coverage and operates independently with reference to the insuring agreement. *See Trinity*

*Universal Ins. Co. v. Broussard*, 932 F. Supp. 1307, 1310 (N.D. Okla. 1996); *Hartford Accident & Indem. Co v. A.P. Beale & Sons, Inc.*, 644 N.Y.S.2d 442, 443 (App. Div. 1996). Exclusions should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose. *See Midland Ins. Co. v. Home Indem. Co.*, 619 S.W.2d 387, 389 (Tenn. Ct. App. 1981). Once an insurer has established that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion. *See Just v. Land Reclamation, Ltd.*, 445 N.W.2d 683, 688 (Wis. Ct. App. 1989), *rev'd on other grounds*, 456 N.W.2d 570 (Wis. 1990).

# VI.
## STANDARD FIRE'S POLICY LANGUAGE

We turn first to the insuring agreement of Standard Fire's policy to establish the outer boundaries of coverage. Then, we will examine the exclusions from coverage relied on by Standard Fire to limit the scope of its policy's coverage.

## A.
### The Insuring Agreement

The insuring agreement in Coverage A of Standard Fire's policy provides succinctly that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The insuring agreement also states that the policy covers bodily injury and property damage that occur within the policy period and that are caused by an "occurrence" that takes place within the coverage territory. The present dispute concerns whether an "occurrence" has caused "property damage;" there is no dispute that the claims arose during the policy period and within the coverage territory.

Standard Fire's policy defines "property damage" as

    a.    Physical injury to tangible property, including all resulting loss of use of the property; or

    b.    Loss of use of tangible property that is not physically injured.

It also defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." Accordingly, Standard Fire's policy covers only the sums its insured becomes legally obligated to pay for physical injury to tangible property or for the loss of use of tangible property that is not injured.

The "physical injury" requirement was added to the standard policy language in 1973[10] to reinforce that these policies cover only visible harm or impairment[11] or actual physical loss to tangible property.[12] Thus, in circumstances that do not involve personal injuries, these policies do not cover economic loss without some sort of physical injury to tangible personal property that is not owned by the insured or that is not part of the insured's work. *See Gulf Ins. Co. v. L.A. Effects Group, Inc.*, 827 F.2d 574, 577 (9th Cir. 1987); *Transcontinental Ins. Co. v. Ice Sys. Of America, Inc.*, 847 F. Supp. 947, 950 (M.D. Fla. 1994); *Hommel v. George*, 802 P.2d 1156, 1158 (Colo. Ct. App. 1990).

Additional construction expenses, lost profits, or diminution in value of the project caused by the insured's defective work are the sort of economic losses that do not fit within the definition of "property damage." *See SLA Property Management v. Angelina Cas. Co.*, 856 F.2d 69, 72-73 (8th Cir. 1988); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 578 P.2d 1253, 1256 (Or. 1978). On facts similar to those in this case, one intermediate appellate court held that the inclusion of defective energy storage units that contributed to the failure of an HVAC system was not "property damage" because the defective units did not cause physical injury to the HVAC system. Accordingly, the court held that the claims for the costs to repair the HVAC system, the lost rent, the lost productivity of the workers in the building, and the excessive electrical consumption were not covered by the contractor's general liability policy. *See Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083,

---

[10]*See* Herbert J. Baumann, *Broad Form Property Liability Coverage* 125, reprinted in *Reference Handbook on the Comprehensive General Liability Policy* (American Bar. Assoc. 1995) ("Baumann").

[11]*See* Donald S. Malecki & Arthur L. Flitner, *Commercial General Liability* 8 (3d ed. 1990) ("Malecki & Flitner").

[12]*See* Baumann, at 126 n.29.

1091-92 (Ill. App. Ct. 1993); *see also Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1009-10 (Ill. App. Ct. 1991); *Sentry Ins. Co. v. S & L Home Heating Co.*, 414 N.E.2d 1218, 1221-22 (Ill. App. Ct. 1980).

## B.

## The Exclusions Claimed by Standard Fire

In addition to the language in its policy's insuring agreement, Standard Fire also relies on two exclusions to support its position that its policy does not cover the damage claims asserted by Highland Rim, Clark & Associates, and Ohio Casualty.[13] These exclusions are commonly known as the "impaired property" exclusion and the "sistership" exclusion.

## The Impaired Property Exclusion

The "impaired property" exclusion in Standard Fire's policy states that the coverage in the policy does not apply to:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policy defines "impaired property" as

---

[13]Highland Rim and Ohio Casualty also request the court to address the policy's "completed operations hazard" exclusion. We decline to do so for two reasons. First, Standard Fire has not based its denial of coverage on this exclusion, and second, the language of an exclusion cannot add coverage to a policy when the coverage is not provided in the insuring clause. Consideration of the "completed operations hazard" exclusion adds nothing to the resolution of the parties' dispute.

tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.      The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.      Your fulfilling the terms of the contract or agreement.

This exclusion was first included in commercial general liability policies in 1966 and was later amended and refined in 1973, 1986, and 1990.[14]  It narrows coverage for claims involving the reduced usefulness or impairment of property other than the insured's.  *See Hamlin, Inc. v. Hartford Accident & Indem. Co.,* 86 F.3d 93, 96 (7th Cir. 1996); Franco, 30 Tort & Ins. L.J. at 800.   The exclusion targets situations where a defective product, after being incorporated into the property of another, must be replaced or removed at great expense thereby causing loss of use of the property.

The effect of the "impaired property" exclusion is to bar coverage for loss of use claims (1) when the loss was caused solely by the insured's failure to provide work of the quality or performance capabilities called for by the contract and (2) when there has been no physical injury to property other than the insured's work itself.  The exclusion does not apply if there is damage to property other than the insured's work, *see Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 136 (3d Cir. 1988); *Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.,* 847 F. Supp. at 950, or if the insured's work cannot be repaired or replaced without causing physical injury to other property.  *See Oscar W. Larson Co. v. United Capitol Ins. Co.,* 845 F. Supp. 445, 448-49 (W.D. Mich. 1993); *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F. Supp. 417, 425-26 (W.D. Mich. 1993); *Elco Indus. v. Liberty Mut. Ins. Co.,* 361 N.E.2d 589, 591 (Ill. App. Ct. 1977).

---

[14]*See* Brady, 63 Def. Counsel J. at 381; Malecki & Flitner, at 49-50; Tinker, 25 Fed'n Ins. Counsel Q., at 264.

Several texts have illustrated applications of the "impaired property" exclusion works using heating and ventilation systems. One text gives the following example:

> [S]ay that the insured installs a heating and ventilation system in a new building. If the system later proves to be defective, resulting in the loss of use of the building while the system is being repaired or replaced, the insurer can cite the portion of the exclusion relating to "impaired property" in denying coverage for a resulting loss-of-use claim against its insured.

Malecki & Flitner, at 52. Another text provides a similar, although more detailed, example:

> The completion of an office tower for DEVCORP was delayed by WARMCO's delay in completing its contract for the installation of heating, ventilation and air conditioning systems. When WARMCO informed GENERAL and DEVCORP that the heating system was completed and ready for use, it was determined that defects in the heating system prevented the heating system from generating sufficient heat to meet the specifications. As a result, the office tower could not be occupied while repairs were made and DEVCORP suffered additional delays and substantial lost rental income. DEVCORP brought an action against GENERAL and WARMCO and GENERAL cross-claimed against WARMCO. Are the claims covered by WARMCO's CGL policy?
>
> Under this exclusion, there is no coverage for the claims against WARMCO because WARMCO's failure to perform resulted in delay and loss of use of property that had not been physically injured.

Joseph G. Blute, *Analyzing Liability Insurer Coverage for Construction Industry Property Damage Claims*, available in WESTLAW, 7 No. 3 Coverage 1, 32 (American Bar Assoc. 1997).

**The Sistership Exclusion**

The "sistership" exclusion in Standard Fire's policy withdraws coverage for claims involving

> [d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall,

> inspection, repair, replacement, adjustment, removal or
> disposal of:
> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";
> if such product, work, or property is withdrawn or recalled
> from the market or from use by any person or organization
> because of a known or suspected defect, deficiency,
> inadequacy or dangerous condition in it.

This provision first appeared in commercial general liability policies in 1966[15] and takes its name from the occurrences in the aircraft industry where enormous loss-of-use claims resulted from the grounding of all airplanes of the same type because one airplane crashed, and its "sisterships" were suspected of having a common defect. *See Arcos Corp. v. American Mut. Liab. Ins. Co.*, 350 F. Supp. 380, 383, 384-85 (E.D. Pa. 1972); *Paper Machinery Corp. v. Nelson Foundry Co.*, 323 N.W.2d 160, 163-64 (Wis. Ct. App. 1982).[16]

The exclusion is designed to shield insurers from liability for the costs associated with unanticipated product recalls. *See Forest City Dillon, Inc. v. Aetna Cas. & Sur. Co.*, 852 F.2d 168, 173 (6th Cir. 1988); *Paper Machinery Corp. v. Nelson Foundry Co.*, 323 N.W.2d at 164. It does not apply to claims involving losses resulting from the failure of the insured's product or work, *see Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d at 136 n.9, or to claims that are not based on the withdrawal or recall of the insured's own product or work. *See Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d at 137; *Fitness Equip. Co. v. Pennsylvania Gen. Ins. Co.*, 493 So. 2d 1337, 1343 (Ala. 1985).

The removal of defective products that failed after their installation does not come within the sistership exclusion of the insured's general liability policy because there has been no general withdrawal of similar products from the general marketplace. *See Forest City Dillon, Inc. v. Aetna Cas. & Sur. Co.*, 852 F.2d at 173-74; *Marathon Plastics, Inc. v. International Ins. Co.*, 514 N.E.2d 479, 487 (Ill. App.

---

[15]*See* Tinker, 25 Fed'n Ins. Counsel Q. at 264.

[16]*See* Malecki & Flitner, at 52; Jean E. Maess, Annotation, *Validity and Construction of "Sistership" Clause of Products Liability Insurance Policy Excepting From Coverage Cost of Product Recall or Withdrawal of Product From Market*, 32 A.L.R. 4th 630, 631 (1984).

Ct. 1987). Based upon the undisputed facts, the "sistership" exclusion does not apply in this case because there is no evidence of a general recall of similar products or materials from the marketplace.

## VII.

### STANDARD FIRE'S OBLIGATION TO DEFEND THE CLAIMS AGAINST CHESTER-O'DONLEY

All that remains is to determine whether Standard Fire has a duty to defend Chester-O'Donley with regard to the claims made by Highland Rim, Ohio Casualty, and Clark & Associates. This duty is measured by the factual allegations in the counterclaims. *See First Nat'l Bank v. South Carolina Ins. Co.*, 207 Tenn. 520, 523, 341 S.W.2d 569, 570 (1960); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d at 480; *I. Appel Corp. v. St. Paul Fire & Marine Ins. Co.*, 930 S.W.2d 550, 552 (Tenn. Ct. App. 1996). An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, *see Hamlin, Inc. v. Hartford Accident & Indem. Co.*, 86 F.3d at 94; *O'Banon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390, 392 (Ky. 1984); *Dempster Bros. Inc. v. U.S.F.&G.*, 54 Tenn. App. 65, 71, 388 S.W.2d 153, 156 (1964), and continues until the facts and the law establish that the claimed loss is not covered. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

### A.

### The Claims of Clark & Associates

In its counterclaim, Clark & Associates asserts that it issued a certificate of substantial completion for the new music building based on Chester-O'Donley's assertions that the mechanical systems in the building, including the HVAC ductwork, had been constructed in accordance with the contract. It seeks to recover $500,000 representing damages for (1) Chester-O'Donley's negligent or fraudulent

misrepresentations, (2) the time required to discover and correct the defective work, (3) its loss of income because the rate of compensation for its remedial work was less than its regular rate, and (4) the injuries to its business reputation and good will.

None of Clark & Associates' claims involve physical damage to tangible property. Rather, they amount to economic losses stemming from Chester-O'Donley's breach of contract. Accordingly, based on the undisputed facts in the record, Standard Fire's policy does not cover the claims asserted by Clark & Associates.

## B.
### The Claims of Highland Rim and Ohio Casualty

Highland Rim alleges in its counterclaim that Chester-O'Donley failed to provide a mechanical system in accordance with its subcontract. It asserts that Chester-O'Donley breached its subcontract and that Highland Rim was required to replace and rework substantial portions of the mechanical systems provided by Chester-O'Donley. As a result, Highland Rim sought damages for (1) the liquidated damages it was required to pay the State, (2) the "additional damages as a result of delays caused by the defective work," (3) impairment of its reputation with the State of Tennessee and the business community, and (4) potential damages stemming from the State's claims for substantial delay and disruption in its use of the music building.

For its part, Ohio Casualty asserted in its counterclaim that it had been required to pay Highland Rim $1,425,835.88 after Chester-O'Donley was declared in default of its subcontract. According to its counterclaim, these funds were used to complete Chester-O'Donley's work and to correct defects or nonconforming work as determined by the project architect.

The definition of "property damage" in Standard Fire's policy limits the policy's coverage to physical injury to tangible property and to the loss of use of tangible property other than the insured's work that has not been physically injured. The "impaired property" exclusion in Standard Fire's policy narrows the loss-of-use

coverage by excluding loss-of-use claims based solely on the insured's failure to provide the work or products called for in the contract. When read together, these provisions exclude coverage when there has been no physical injury to tangible property other than the insured's work.

Highland Rim's claims based on (1) its payment of liquidated damages to the state, (2) the damage to its business reputation, and (3) the State's claims of delay and disruption of its occupation and use of the building are not covered by Standard Fire's policy. These claims involve economic losses stemming from Chester-O'Donley's breach of contract, and they do not involve physical injury to tangible property other than Chester-O'Donley's work. Using the same reasoning, the portion of Ohio Casualty's claim based on the funds it was required to pay Highland Rim to correct Chester-O'Donley's defective work is not covered by Standard Fire's policy.

There is, however, some evidence in the record that the failure of the HVAC system may have caused some physical injury to tangible property other than Chester-O'Donley's work. Standard Fire concedes in its brief that a portion of the funds paid by Ohio Casualty were used to repair "inconsequential damages to wall[s], ceilings and other parts of the business necessitated by the removal of the [HVAC] system." These damages may be covered because, as we have already pointed out, physical injury to other tangible property not part of the insured's work necessarily resulting from the repair or replacement of the insured's work is not excluded by the "impaired property" exclusion. *See Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. at 448-49; *Action Auto Stores, Inc. v. United Capitol Ins. Co.*, 845 F. Supp. at 425-26; *Elco Indus. v. Liberty Mut. Ins. Co.*, 361 N.E.2d at 59.

None of the claims asserted in Highland Rim's and Ohio Casualty's counterclaims are covered by Standard Fire's policy except for the claim based on physical injury to portions of the building that were not within the scope of Chester-O'Donley's work. Claims based on physical injury to the building caused by the repair or replacement of the defective ductwork installed by Chester-O'Donley's subcontractor may be covered by Standard Fire's policy. The record does not permit determining the existence or extent of these injuries.

The proper course is to vacate the order denying Standard Fire's motion for summary judgment and to remand the case with directions to enter an order finding that Clark & Associates' claims and all the claims of Highland Rim and Ohio Casualty, except for their claims based on damage to the building caused by the repair or replacement of the defective ductwork, are not covered by Standard Fire's policy. On remand, the trial court may determine that these claims are likewise not covered if the undisputed evidence demonstrates either that the repair or replacement of the defective ductwork did not damage the other portions of the building or that this damage was truly "inconsequential."

Since Standard Fire's policy arguably covers one of the claims made by Highland Rim and Ohio Casualty, we find that Standard Fire has a duty to defend Chester-O'Donley. Accordingly, we affirm the trial court's order and remand the case for further proceedings consistent with this opinion. Should the trial court later conclude that other portions of the building were not physically damaged by the repair or replacement of the defective ductwork or that this damage was truly "inconsequential," the court may then find that Ohio Casualty no longer has a duty to provide Chester-O'Donley a defense with regard to this claim.

## VIII.

### ESTOPPEL TO DENY COVERAGE

Chester-O'Donley and Clark & Associates also assert that Standard Fire should be estopped to deny coverage because a claim consultant told them that he believed that the policy might cover Highland Rim's claim that it had to perform substantial work on the "mechanical system" and Clark & Associates' claim for lost income. We find little merit with this argument for two reasons. First, an insurer's duties to defend and indemnify arise from the terms of its policy, not from later statements of its agents. *See Kentucky Farm Bureau Mut. Ins. Co. v. Cann*, 590 S.W.2d 881, 883-84 (Ky. Ct. App. 1979). Second, we have determined as a matter of law that Standard Fire's policy does not cover any of Clark & Associates' claims and that it may cover only those claims asserted by Highland Rim relating to physical injury to the portions

of the building not within the scope of Chester-O'Donley's work that resulted from the repair or replacement of the defective ductwork.

## IX.

We vacate the order finding that Standard Fire's policy provides coverage for Chester-O'Donley with regard to all the claims asserted by Highland Rim, Clark & Associates, and Ohio Casualty. We remand the case with directions to enter an order finding that Standard Fire must provide a defense only with regard to the Highland Rim's and Ohio Casualty's claims based on physical damage to portions of the building not within the scope of Chester O'Donley's work that resulted from the repair or replacement of the defective ductwork and to take any other actions consistent with this opinion. We tax the costs of this appeal in equal proportions to Standard Fire Insurance Company and its surety, Clark & Associates Architects, Inc., Highland Rim Constructors, Inc., Chester-O'Donley & Associates, Inc., and Ohio Casualty Insurance Company for which execution, if necessary, may issue.


_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE