# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 20, 2000 Session

## AMERICAN INDEMNITY COMPANY v. FOY TRAILER RENTALS, INC., ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. 99-0524-3    D. J. Alissandratos, Chancellor

---

### No. W2000-00397-COA-R3-CV - Filed November 28, 2000

---

American Indemnity Company sought a declaratory judgment that its commercial general liability (CGL) policy did not cover claims made by Ms. Johnson against the Appellants in her federal court complaint and that it did not have a duty to defend Appellants in the federal action. The Chancery Court for Shelby County held that there was no coverage and no duty to defend. Appellants appealed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined. HOLLY K. LILLARD, J., filed a concurring opinion.

Charles W. Hill, Memphis, Tennessee; and Kimberly E. Sands, Memphis, Tennessee, for the appellants, Foy Trailer Rentals, Inc., Michael Rivalto, and Pamela Hinman.

David S. Zinn, Brentwood, Tennessee, for the appellee, American Indemnity Company.

### OPINION

On November 20, 1999, Angela Johnson (Ms. Johnson) filed a complaint in the United States District Court for the Western District of Tennessee against the appellants, Foy Trailer Rentals, Inc. (Foy), Michael Rivalto (Mr. Rivalto), and Pamela Hinman (Ms. Hinman), *inter alia*, alleging violations of Title VII[1] and of the Tennessee Human Rights Act.[2] In her complaint, Ms. Johnson averred that she was an employee of Thermo King and that on or about November 6, 1997, she confided in her boss, Ms. Wade, that she may be pregnant. When it became clear that Ms. Johnson

---

[1] 42 U.S.C. § 2000e *et seq.* (1994).

[2] Tenn. Code Ann. § 4-21-101 *et seq.* (1999).

was indeed pregnant and was going to keep her baby, Ms. Johnson alleged that Ms. Wade began to openly disapprove of Ms. Johnson's decision. Ms. Johnson further alleged in her complaint that other workers "followed [Ms. Wade's] lead." Specifically, Ms. Johnson averred that Ms. Hinman, who was an employee of Foy but who worked in the same office with Ms. Johnson, called Ms. Johnson a "stupid winch," a "bitch," and other "vile and sexist names;" told Ms. Johnson that she was going to fire Ms. Johnson's ex-husband because she was tired of dealing with the wage assignment/garnishment for child support for Ms. Johnson's two children; and loudly announced the incorrect time of Ms. Johnson's arrival and then proclaimed her to be late. Additionally, Ms. Johnson stated in her complaint that Mr. Rivalto, one of Ms. Johnson's immediate supervisors and one of the principal officers of Thermo King and Foy, told her that "it use to be women like you would step out of the field, onto the side of a road, have a baby and go back to work; so I do not know what the big deal is?" Mr. Rivalto fired Ms. Johnson on April 14, 1998.

Ms. Johnson alleged that Thermo King and Foy are liable under the doctrine of respondeat superior for the gender and racial discrimination committed by their employees. Ms. Johnson stated that she suffered lost wages, embarrassment, humiliation, mental anguish, emotional pain and suffering, and loss of enjoyment of life due to the hostile, abusive, and offensive work environment created by the Appellants. Ms. Johnson sought punitive damages based upon the Appellants' alleged willful, oppressive, and deliberately indifferent conduct. Before an Answer was filed, Ms. Johnson amended her complaint to include additional causes of action for racial discrimination and retaliatory discharge pursuant to 42 U.S.C. § 1981.

During the time the alleged harassment occurred, Foy was insured under a Commercial General Liability Policy (CGL) issued by American Indemnity Company.[3] By letters dated January 14, 1999, American Indemnity Company notified Foy, Mr. Rivalto, and Ms. Hinman that it would defend them in the federal action brought by Ms. Johnson under a full reservation of rights, including its right to deny coverage and to withdraw from the defense it was providing them.

On June 11, 1999, American Indemnity Company filed a Complaint for Declaratory Judgment in the Chancery Court for Shelby County, Tennessee, in which it asked the court to determine whether it had an obligation to defend and indemnify Foy, Mr. Rivalto, and Ms. Hinman for the claims made in Ms. Johnson's federal suit and whether the CGL policy provided coverage for the allegations made against Foy, Mr. Rivalto, and Ms. Hinman in the federal suit. American Indemnity Company filed a motion for summary judgment. The trial court granted summary judgment in favor of American Indemnity Company, finding that under the CGL policy, American Indemnity Company did not have a duty to defend the federal court action on behalf of Foy, Mr. Rivalto, and Ms. Hinman, and that the policy in question did not provide coverage for the allegations against Foy, Mr. Rivalto, and Ms. Hinman in the federal action. Foy, Mr. Rivalto, and Ms. Hinman appealed, raising the issue of whether the trial court erred in granting American Indemnity Company's motion for summary judgment.

---

[3] Foy Trailer Rentals was covered from November 6, 1997 to November 6, 1998.

This appeal involves questions regarding an insurance policy's coverage and an insurer's duty to defend which requires this court to interpret the insurance policy in light of the claims asserted against the insured. If any one of the allegations made against the insured is covered by the policy, the insurer has a duty to defend the lawsuit regardless of the number of allegations falling outside of coverage. *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (citations omitted). Issues relating to the scope of coverage and an insurer's duty to defend are questions of law. *See Standard Fire Inc. Co. v. Chester-O'Donley & Assoc., Inc.,* 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). Summary judgment is appropriately used in resolving legal questions only when the relevant facts are undisputed. *See St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994).

The trial court's grant of summary judgment is not entitled to a presumption of correctness on appeal. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Rather we must review *de novo* whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Mason v. Seaton*, 942 S.W.2d 470,472 (Tenn. 1997). A summary judgment is warranted only when there are no genuine, material factual disputes with regard to the claim or defense asserted in the motion and when the moving party is entitled to a judgment as a matter of law. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

The insurance policy issued by American Indemnity Company to Foy Trailer Rentals is in the record. There are no factual disputes concerning the contents of this policy; thus, its interpretation presents only a question of law. The summary judgment granted to American Indemnity Company can stand only if it is established, as a matter of law, that the CGL policy does not cover the asserted claims against the Appellants.

Insurance contracts are subject to the same rules of construction and enforcement as general contracts. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Absent fraud or mistake, the insurance contract should be interpreted as written, giving natural and ordinary meaning to its terms. *See Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn. Ct. App. 1992); *Drexel Chem. Co.*, 933 S.W.2d at 477. However, ambiguous terms in the insurance contract will be construed against the insurer and in favor of the insured. *See Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996). Insurance polices should be construed as a whole and in a reasonable and logical manner. *See English v. Virginia Sur. Co.*, 268 S.W.2d 338, 340 (Tenn. 1954).

Commercial general liability policies are designed to protect the insured from losses arising out of business operations. CGL policies are not "all-risk" policies; rather, these policies provide the insured with coverage up to the policy limits for damages for which the insured becomes liable as a result of tort liability to a third party. When facing coverage questions, the essential elements of a CGL policy should be construed in the following order: the declarations, insuring agreement and definitions, exclusions, conditions, and endorsements. *See Standard Fire Ins. Co.*, 972 S.W.2d at 7. The insuring agreement reflects the limits of an insurer's liability. If coverage is not found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions are read in terms of the insuring agreement to which they apply, and they can only decrease coverage. *See id.*

In "Coverage A." of the policy issued to Foy, the insuring agreement states as follows:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies[.] We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

  (2) The "bodily injury" or "property damage" occurs during the policy period.

The present dispute concerns whether the allegations made by Ms. Johnson in her federal complaint constitute an "occurrence" causing her "bodily injury." It is undisputed that the claims against the Appellants arose during the coverage period and in the coverage territory.

Section V of the policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Accordingly, American Indemnity Company's policy covers only those sums Foy becomes legally obligated to pay for bodily injury, sickness or disease resulting from an accident or continuous exposure to a harmful condition. American Indemnity Company claims that there is no "bodily injury" alleged in Ms. Johnson's complaint. American Indemnity Company proposes that Ms. Johnson's allegations of "embarrassment, humiliation, mental anguish, emotional pain and suffering . . . and serious mental injury" do not rise to the level of "bodily injury" as contemplated in the CGL policy, and it proposes that Ms. Johnson's allegations of "episodic crying and hair loss," are symptoms of emotional distress, and thus are not "bodily injuries."

In *Bituminous Fire and Marine Insurance Company v. Izzy Rozen's, Inc.*, 493 F.2d 257, 261 (6th Cir. 1974), a case arising out of the United States District Court for the Western District of Tennessee, the court cited *Provident Life & Accident Insurance Company v. Campbell*, 79 S.W.2d 292 (Tenn. Ct. App. 1934), for the proposition that an insurance policy contemplates "some injury to the body of a physical nature in order to come within the definition of 'bodily injury.'"

Additionally, in *Guardian Life Insurance Company of America v. Richardson*, 129 S.W.2d 1107 (Tenn. Ct. App. 1939), this court stated that

> [t]he word "disease," **unrestricted by anything in the context**, includes disease of the mind as well as disease of the body.
>
> But, in the policy here involved, the word "disease" is "restricted" by the word "bodily"; and grammatically, the word "bodily" modifies "disease", as well as "injury"; and manifestly it was inserted for the purpose of excluding **mental disease**.
>
> The adjective "bodily" means "of or pertaining to the body, in distinction from the mind."

*Id.* at 1115 (emphasis in original) (internal quotations and citations omitted).

Based on the foregoing case law, we must agree with American Indemnity Company's position that Ms. Johnson's complaint did not allege any "bodily injury" as contemplated by the policy, and thus, "Coverage A." of the policy does not apply.

American Indemnity Company contends that the following two exclusions would apply if coverage was found under the policy. The "Expected or Intended Injury" exclusion exempted from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." The "Employer's Liability" exclusion exempted "'Bodily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (2) Performing duties related to the conduct of the insured's business[.]" However, because this court finds that the Appellants were not covered under "Coverage A." of the CGL policy, it is unnecessary for this court to address the exclusions to "Coverage A."

Appellants contend that they are also covered by "Coverage B." of the CGL policy for personal injury liability. In "Coverage B." of the policy issued to Foy, the insuring agreement states as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
**1. Insuring Agreement**
a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. . . .
. . . .

b.      This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you[.]

"Personal injury" was defined as "injury, other than 'bodily injury', arising out of one or more of the following offenses: . . . d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" Personal injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" or "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured" was excluded from coverage. Accordingly, American Indemnity Company's policy provides the Appellants with coverage for personal injury arising out of Foy's business, including slander or libel, but the policy notably excludes from coverage any personal injury due to slander or libel committed with knowledge of its falsity or willfully committed in violation of a statute or ordinance prohibiting such conduct.

To fully understand what was intended as "personal injury" under the American Indemnity Company's policy, it is essential to understand what is meant by the phrase "arising out of." In the case of ***Anderson v. Save-A-Lot, Ltd.***, 989 S.W.2d 277 (Tenn. 1999), the Tennessee Supreme Court defined "arising out of" as follows:

Generally, an injury arises out of and in the course of the employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury "arose out of the employment" is to be resolved in favor of the employee. ***Great American Indemnity Company v. Fridell***, 198 Tenn. 360, 280 S.W.2d 908 (1955); ***Tapp v. Tapp***, 192 Tenn. 1, 236 S.W.2d 977 (1951).

. . . .

"The phrase, 'in the course of,' refers to time and place, and 'arising out of,' to cause or origin; and an injury by accident to an employee is 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment."

We have said that an injury arises out of the employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work [was] required to be performed and the resulting injury." ***T.J. Moss Tie Co. v. Rollins***, 191 Tenn. 577, 235 S.W.2d 585 (1951).

*Anderson*, 989 S.W.2d at 279-80 (further citations omitted).

There is a fine line to be drawn between those personal injuries which arise out of the employment and those injuries which are purely personal in nature that occur during employment.

Taking Ms. Johnson's complaints as averred, we believe that the alleged acts of the Appellants arose because of the concern surrounding the time-off Ms. Johnson would have to take due to her pregnancy. However, the remarks that Ms. Johnson allegedly endured can be considered nothing other than purely personal in nature. Because we find that the remarks allegedly said to Ms. Johnson were purely personal in nature, we find that no coverage existed under "Coverage B."

American Indemnity Company contends that, had we found coverage to exist under the policy, two additional exclusions would apply. Because this court found that no coverage existed under "Coverage B.," however, this court does not find it necessary to discuss the exclusions contained in the American Indemnity Company policy.

### *Conclusion*

We have determined, as a matter of law, that American Indemnity Company's policy does not cover any of Ms. Johnson's complaints against the Appellants. Accordingly, we affirm the trial court's grant of summary judgment to American Indemnity Company. The costs of this appeal are taxed to the Appellants, Foy Trailer Rentals, Inc., Michael Rivalto, and Pamela Hinman, and their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE