IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2001 Session

## POLICEMAN'S BENEFIT ASSOCIATION OF NASHVILLE, TENNESSEE, ET AL. v. NAUTILUS INSURANCE COMPANY

**A Direct Appeal from the Chancery Court for Davidson County
No. 00-1042-I     The Honorable Irvin H. Kilcrease, Jr.**

---

**No. M2001-00611-COA-R3-CV - Filed February 1, 2002**

---

Plaintiff filed this declaratory judgment action against its liability insurance carrier to determine the carrier's duty to defend plaintiff in a federal lawsuit and its obligation to provide indemnity coverage. The trial court granted defendant summary judgment, and plaintiff appeals. We vacate and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

R. Eddie Davidson, Nashville, For Appellant, Policeman's Benefit Association of Nashville, Tennessee

Alan M. Sowell, Nashville, For Appellee, Nautilus Insurance Company

### OPINION

Plaintiffs, Policeman's Benefit Association of Nashville ("PBA"), Mark A. Bradshaw, a member and director of PBA, James L. Jones, and the Metropolitan Government of Nashville, Davidson County, Tennessee, are all named insureds under a special event liability insurance policy written by Defendant Nautilus Insurance Company ("Nautilus"). On October 30, 1998, at the PBA-sponsored haunted house event ("Haunted Prison"), an altercation occurred between two patrons and police officers who were staffing the Haunted Prison. On October 28, 1999, the patrons, Darlene and Michael Roberts (the "Roberts"), filed a complaint in federal court (the "Roberts' Complaint" or "Federal Complaint") against PBA seeking damages for violations of constitutional rights, false arrest, false imprisonment, outrageous conduct, assault, battery, negligence, and malicious

prosecution.[1]  The Roberts amended their complaint on April 3, 2000 (the "Roberts' Complaint"), which alleges, in pertinent part:

> 4.1  On Friday, October 30, 1998, shortly before 10:00 P.M., the Plaintiffs, who are husband and wife, arrived at the Haunted Prison located on Ezell Pike in Nashville, Tennessee which was operated and sponsored by the Policeman's Benefit Association.  Upon information and belief, security for the Haunted Prison was provided by Warner who employed off duty police officers from defendant Metropolitan Police Department.
>
> 4.2  The plaintiffs waited in line for approximately 45 minutes before they were allowed to enter the Haunted Prison.
>
> 4.3 Approximately five minutes after they had entered the Haunted Prison, the plaintiffs were proceeding in an orderly manner down a hallway therein.  Mr. Roberts was walking beside his wife, to her left, with his right hand holding her left hand.
>
> 4.4  While proceeding down the hallway in the manner described above, a door suddenly and without warning opened with substantial force toward Mr. Roberts from the wall to his left.  In order to keep the door from striking him, Mr. Roberts reached out his left hand and pushed the door back toward a closed position.
>
> 4.5  Mr. Roberts believed that the opening of the door was simply part of the Haunted Prison's "act" or "special effects."  However, unknown to Mr. Roberts, defendant Jones had evidently opened the door for the purpose of entering the hallway.
>
> 4.6  After the plaintiffs had passed by said door, defendant Jones stepped into the hallway and addressed the plaintiffs in a belligerent tone, commanding them to leave the premises.  At no point did defendant Jones identify himself as a police officer or as a security officer.  Moreover, defendant Jones, at the time, was not dressed in any uniform, but instead was simply wearing casual clothes, including a T-shirt with the words "Death Row" printed thereon.  At the time, the plaintiffs had no idea that defendant Jones was purporting to act in any official capacity, either as a security officer or on behalf of the Metropolitan Police Department.   In fact, the plaintiffs assumed either that Mr. Jones' appearance and conduct was simply part of the

_____

[1] By Order entered July 27, 2000, all constitutional claims against PBA were dismissed with prejudice.

Haunted Prison "act" or that he was a belligerent customer who had become lost prior to opening the side door without warning.

4.7  In response to defendant Jones telling the plaintiffs to leave the Haunted Prison, Mrs. Roberts stated that they were not going to leave unless they received a refund for the money they had just spent to enter the Haunted Prison.  Defendant Jones did not respond, but instead, at this point in time made physical contact with Mr. Roberts, attempting to grab hold of him.  Mr. Roberts pulled away from defendant Jones, then walked away from defendant Jones and proceeded with his wife down the hallway of the Haunted Prison.

4.8  A couple of minutes later, as the plaintiffs continued through the Haunted Prison, approximately eight to 12 persons suddenly and without warning appeared in the plaintiffs' presence.  With the exception of one individual who was dressed in a policeman's uniform, the remaining persons were dressed casually, and some or all were wearing "Death Row" T-shirts similar to that worn by defendant Jones.  Upon information and belief, these individuals had been summoned by defendant Jones, who, rather than taking responsibility for having caused the problem in the hallway minutes earlier, had radioed for help by misrepresenting that the plaintiffs were trouble-makers.

4.9  At the time the eight to 12 persons appeared, the defendants were still holding hands as before.  The plaintiffs were thereafter forcibly separated, and defendant Brennan, who was the one individual in a uniform, took hold of Mrs. Roberts' arm, twisting it behind her back.

4.10  Almost immediately after defendant Brennan took hold of Mrs. Robert's arm, defendant Bradshaw, who was out of uniform and dressed in a Death Row T-shirt, started towards Mrs. Roberts.  Fearing for his wife's safety, Mr. Roberts grabbed defendant Bradshaw's shirt, pushed him away from his wife, and told him not to touch his wife.  Defendant Bradshaw did not identify himself as a police officer before or during this incident, and the plaintiffs only learned later that he was a police officer.

4.11  Immediately after Mr. Roberts grabbed defendant Bradshaw's shirt and pushed him away from his wife, defendant Bradshaw, defendant Brennan, and John and Jane Doe Numbers 1-10 (none of whom wore uniforms) attacked Mr. Roberts, knocking him to the ground and thereafter kicking and kneeing him repeatedly.  At the

time when Mr. Roberts was first knocked to the ground, either defendant Brennan or someone standing behind defendant Brennan, intentionally, maliciously and/or recklessly shoved Mrs. Roberts face-first into the wall near where she had been standing. As a result of this act, Mrs. Roberts suffered substantial injuries to her face, particularly to her forehead, nose and eye areas. These injuries subsequently necessitated medical treatment that night. As a result of the above-described assault upon Mr. Roberts, he suffered bruises and contusions to his back and side areas of his body.

4.12 After these assaults, Mr. Roberts was handcuffed, and he, Mrs. Roberts, and another couple who had accompanied the Roberts to and through the Haunted Prison were led out of the Haunted Prison.

4.13 Shortly after being escorted from the Haunted Prison, despite having been attacked and beaten by defendants Bradshaw, Brennan, and the John and Jane Does numbers 1-10, was charged by the Metropolitan Police Department (through defendants Bradshaw and Brennan) with assault and disorderly conduct. The charges against Mr. Roberts have since been suspended until February 1, 2000 pursuant to an agreed order of pretrial diversion, at which time the charges are expected to be dismissed.

4.14 Mrs. Roberts was not charged with any offense that night. In fact, it was only after Mr. and Mrs. Roberts filed charges of misconduct against defendant Metropolitan Police Department, and defendants Brennan and Bradshaw through the Department's Internal Affairs Division that these defendants, in an effort to retaliate against them for filing said charges, instituted criminal charges against Mrs. Roberts. The charges against Mrs. Roberts have since been dismissed in her favor.

5. Constitutional Violations. This section incorporates all of the previous sections of this complaint.

5.1 Defendants, Bradshaw, Brennan, Jones and John and Jane Doe. The defendants Bradshaw, Brennan, Jones and John and Jane Doe violated the plaintiffs' right to be free from excessive force used against them by police officers as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution when they committed the acts of physical force against the plaintiffs set forth in paragraph 4 through 4.14.

5.2 The defendants, Bradshaw, Brennan, Jones and John and Jane Doe violated the plaintiffs' right to be free from arrest without probable cause as guaranteed by the Fourth Amendment to the United States Constitution when they arrested the plaintiffs for criminal charge without probable cause as set forth in paragraph 4 through 4.14.

5.3 The defendant Metro. The defendant Metro has a policy, custom and usage where in its officer's [sic] use excessive force against citizens in violation of their right to be free from excessive force as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. This policy, custom and usage is a proximate cause of the constitutional deprivation and injuries inflicted upon the plaintiffs by the defendants Bradshaw, Brennan, Jones, and John and Jane Doe.

5.4 Defendants the Association and Warner. The defendants Association and Warner were acting in concert with the defendants Bradshaw, Brennan, Jones, and John and Jane Doe in such a manner and nexus as to make them state actors. Accordingly, the defendants, the Association and Warner had a policy, custom and usage of allowing its employees to use excessive force and this policy custom and usage was a proximate cause of the constitutional deprivations and injuries suffered by the plaintiff.

5.5 Further the defendants Association and Warner failed to properly train and supervise their employees, the other defendants, and this failure to supervise and train was a proximate cause of the injuries and constitutional deprivation suffered by the plaintiff.

6. State law claims. The plaintiff incorporates by reference all of the previous paragraphs into this section.

6.1 The conduct of defendants, accept (sic) Metro, constitute false arrest, false imprisonment, outrageous conduct, assault, battery, malicious prosecution and negligence.

6.2 Defendants, Association and Warner, are vicariously liable for the torturous [sic] actions of the defendants, Bradshaw, Brennan, Jones, and John and Jane Doe.

7. Injuries. The plaintiff incorporates the preceding paragraphs of this complaint into this section.

7.1 As a direct and proximate result of the unconstitutional, negligent and torturous [sic] actions of the defendants, the plaintiffs have suffered physical injury, pain and suffering, embarrassment, and emotional distress, loss of work, medical expenses, legal expenses, and a deprivation of constitutionally guaranteed rights.

PBA contacted its insurer, Defendant Nautilus Insurance Company ("Nautilus"), to inform them of the Roberts' lawsuit. In a letter from Claims Examiner Brenda Hibbert to PBA dated January 13, 2000, Nautilus denied coverage, claiming that the causes of action contained in the Roberts' Complaint were intentional torts and, therefore, specifically excluded from the policy as written. The Nautilus policy contains the following relevant provisions:

SECTION 1 - COVERAGES
COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

\*          \*          \*

b. ***This insurance applies to "bodily injury" and "property damage" only if:***
***(1) The "bodily injury" or "property damage" is caused by an "occurrence"*** that takes place in the "coverage territory;" and
(2) The "bodily injury" or "property damage" occurs during the policy period.

2. Exclusions

***This insurance does not apply to:***
***a.  Expected or Intended Injury***
"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured. ***This exclusion does not apply to "bodily injury" resulting***

-6-

*from the use of reasonable force to protect persons
or property.*

\*          \*          \*

SECTION V - DEFINITIONS

\*          \*          \*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*          \*          \*

**12.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

13.  "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;
   b. Malicious prosecution;

\*          \*          \*

15.  "Property damage" means:
   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(emphasis added).

PBA commenced this action against Nautilus on April 4, 2000, seeking a declaratory judgment that Nautilus provide PBA coverage for the incident under the policy in question, and requiring Nautilus to defend the Roberts' lawsuit. Both parties filed Motions for Summary Judgment, and the trial court granted judgment in favor of Nautilus. In his Order entered on January 24, 2001, the Chancellor found that the Roberts' Complaint, as amended, did "not contain a factual basis to require the defendant, Nautilus, to defend the action, nor provide coverage under Nautilus' policy."

PBA has appealed and presents the following issue for review, as stated in its brief:

Whether the trial court incorrectly entered summary judgment in favor of defendant Nautilus Insurance Company and against plaintiff's Policeman's Benefit Association, et al., in finding that the Amended Complaint filed against Policeman's Benefit Association, et al in Federal Court did not contain a requisite factual basis to here require defendant Nautilus Insurance Company to provide coverage under their policy written for Policeman's Benefit Association.

This issue is really composed of two separate and distinct issues: (1) Whether Nautilus owes PBA a duty to defend the Roberts' federal action; and (2) Whether Nautilus owes PBA a duty to indemnify. Since we believe the record in this case contains facts sufficient to trigger Nautilus' duty to defend, and because Nautilus' duty to indemnify PBA is dependent upon the outcome of the underlying action, we vacate the trial court's order granting summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210-11 (citations omitted) (emphasis in original).

Questions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured. *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App.1998). Where the relevant facts are not in dispute, issues relating to the scope of coverage and an insurer's duty to defend present questions of law and are properly resolved by summary judgment. *Id.* at 5-6. Where only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Duty to Defend

PBA's primary argument in support of its position in this case is that, in Tennessee, "[a]n insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy." ***Drexel Chemical Co. v. Bituminous Ins. Co.***, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). In ***Drexel***, this Court noted that where the duty to defend is at issue:

> This court must review the allegations of the complaint and determine whether any of them are covered under the policy. If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. ***An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."***

***Id.*** (quoting ***Glens Falls Ins. Co. v. Happy Day Laundry, Inc.***, 1989 WL 91082 (Tenn. Ct. App. August 14, 1989) (emphasis added). Similarly, courts have noted that, "an insurer may be required to defend a suit even if the later true facts show that there is no coverage." ***Northland Casualty Co. v. HBE Corp.***, 160 F. Supp. 2d 1348, 2001 U.S. Dist. LEXIS 21274, at \*27 (M.D. Fla. 2001). Therefore, in order to determine if any of the acts which are the subject of the Roberts' lawsuit are covered under the Nautilus policy, we must review the allegations contained in the Roberts' Complaint.

The thrust of PBA's argument in this case is that the Roberts' Complaint contains allegations of negligence which may be covered under the Nautilus policy. Under ***Drexel***, facts which are "potentially within the policy's coverage" are sufficient to trigger Nautilus' duty to defend. ***Id.*** We believe that such facts are contained in the Roberts' Complaint. Specifically, the Complaint states that, "At the time when Mr. Roberts was first knocked to the ground, either defendant Brennan or someone standing behind defendant Brennan, intentionally, maliciously ***and/or recklessly*** shoved Mrs. Roberts face-first into the wall near where she had been standing." (emphasis added). The Complaint also contains the following language, "The conduct of defendants, accept (sic) Metro, constitute false arrest, false imprisonment, outrageous conduct, assault, battery, malicious prosecution and negligence." Since the Nautilus policy defines a covered "occurrence" as "an accident", but does not further define "accident," such allegations of negligence come under the description of an "accident" for purposes of the duty to defend.

We also believe the issue of Nautilus' duty to defend may be resolved by reviewing the "Expected or Intended Injury" exclusion to the disputed policy. The Nautilus policy, as quoted above, provides that the exclusion for expected or intended injury "***does not*** apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." (emphasis added) The following language contained in the Roberts' Complaint is particularly relevant to this exception:

> Upon information and belief, these individuals had been summoned
> by defendant Jones, who, rather than taking responsibility for having

> caused the problem in the hallway minutes earlier, ***had radioed for
> help by misrepresenting that the plaintiffs were trouble-makers.***

(emphasis added). This language, coupled with the fact that Mr. Roberts was "handcuffed. . . and led out of the Haunted Prison," and later charged with assault and disorderly conduct, makes it at least "probable" that the Haunted Prison staff were trying to protect other patrons and/or property from the Roberts. This is sufficient to bring the Roberts' action under the Nautilus policy insofar as the duty to defend..

Likewise, we note that the Answer to the Roberts' Complaint contains the following language, which reinforces the above conclusion:

> 4.8  These defendants admit that a call for assistance was made ***due to the unruly behavior of the plaintiffs****. . . .*
> 4.9  It is admitted that defendant Brennan took reasonable steps to escort Darlene Roberts out of the building after she refused verbal request (sic) to leave, ***and she continued to behave in a loud, belligerent and disorderly manner****.  . . .*
> 4.10  It is admitted that defendant Bradshaw attempted ***to assist in escorting the unruly plaintiffs from the premises.  Mr. Roberts physically attacked Mark Bradshaw****.  . . .*
> 4.11  It is denied that defendant Bradshaw attacked plaintiff Roberts.  At all times ***Bradshaw used reasonable means to attempt to control the unruly plaintiffs****.  . . .*

(emphasis added). This language, taken together with the language in the Roberts' Complaint, brings the Roberts' action within the scope of Nautilus' duty to defend. If the officers were acting to protect themselves, other patrons, or PBA property from the Roberts, any exception for intentional conduct would not apply.

While we have found no Tennessee cases directly on point, other jurisdictions have recognized that the same policy language regarding "use of reasonable force to protect persons or property" would require an insured to defend against a third-party action. ***See, e.g., Allstate Insurance Co. v. Belezos***, No. 90-35633, 1991 U.S. App. LEXIS 30609, at *10 (9th Cir. 1991) (noting no duty to defend on part of insurer because plaintiff "was not acting to protect persons or property from injury or damage" when she engaged in anti-abortion protest); ***Security Insurance Co. of Hartford v. Altipenta, Inc.***, No. 96-3954, 1997 U.S. Dist. LEXIS 5296, at *11-13 (E.D. Pa. 1997) (holding the insurer's duty to defend was not triggered where insured failed to present any evidence that the insured's employees were acting to protect persons or property) ***Firemen's Insurance Co. of Washington, D.C. v. 860 West Tower, Inc.***, 246 A.D.2d 401, 401-02 (N.Y. App. Div. 1998) (holding that "actual knowledge of facts establishing a reasonable possibility that defendant employee was acting in self-defense" led to a duty on part of insurer to defend its insured). These cases generally hold that, where an insurer has denied coverage under a particular policy exclusion,

the insured must present "evidence to show that the exclusion which appears to be triggered does not apply after all." ***Air Products and Chemicals, Inc. v. Hartford Accident & Indemn. Co.***, 25 F.3d 177, 180 (3d Cir. 1994). ***See also Mount Vernon Fire Ins. Co. v. The 25th Hour S & Contract Associates, Piers 13/15, Inc.***, No. 91 Civ. 6416 (RPP), 1993 U.S. Dist. LEXIS 15751, at *4 (S.D. NY 1993).

In this case, although neither party specifically raised the issue of the "reasonable force" exception to the Nautilus policy, we believe there is sufficient allegations contained in the Federal Complaint and PBA's Answer to trigger Nautilus' duty to defend. For this reason, we hold that the trial court erred in granting summary judgment in favor of Nautilus on the issue of duty to defend.

Duty to Indemnify

As to the issue of indemnification, we also hold that the trial court erred in granting summary judgment in favor of Nautilus. As we noted above, summary judgment is only appropriate where "allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." ***Northland Casualty Co. v. HBE Corp.***, 160 F. Supp. 2d 1348, 2001 U.S. Dist. LEXIS 21274, at *28 (M.D. Fla. 2001). In this case, we have held that the Roberts' allegations, coupled with PBA's Answer to the Roberts' Complaint, are sufficient to trigger Nautilus' duty to defend PBA. The record does not indicate if the underlying action has been resolved. Under these circumstances, "[b]ecause an insured's duty to indemnify is dependent upon the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." ***Northland Casualty Co.***, at *28. ***See also Fuisz v. Selective Ins. Co. of Am.***, 61 F.3d 238, 247 (4th Cir. 1995); ***Foundation Reserve Ins. Co., Inc. v. Mullenix***, 642 P.2d 604 (N.M. 1982); ***First Oak Brook Corp. Syndicate v. Ultimate Sports Bar, Inc.***, No. 94-4395, 1995 U.S. Dist. LEXIS 5490, at * 12 (E.D. Pa. 1995).

For the foregoing reasons, we vacate the order of the trial court granting summary judgment to Defendant/Appellee Nautilus and grant summary judgment to Plaintiff/Appellant PBA on the issue of duty to defend. As to the issue of indemnity coverage under the policy in question, we express no opinion but simply vacate the trial court's order. This case is remanded for the trial court to enter an order requiring Defendant/Appellee to defend Plaintiffs in the federal action commenced by Darlene and Michael Roberts, and for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Defendant/Appellee.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.